IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALI WILLINGHAM, ANTWANN SIMPSON AND TYLIAH PHILLPS, ON BEHALF OF THEMSELVES, AND A CLASS OF SIMILARLY SITUATED PERSONS, | CIVIL CLASS ACTION |
| v. | JURY TRIAL DEMANDED |
| POST BROTHERS APARTMENTS and POST COMMERCIAL REAL ESTATE LLC. | NO. 2:23-cv-02640-KSM |

**AMENDED CLASS ACTION COMPLAINT**

**Parties**

1.  Plaintiff, Ali Willingham, is an individual citizen and resident of the Commonwealth of Pennsylvania, formerly residing at Presidential City Apartments ("Presidential"), Apt W1108, Phila., Pa. 19131.

2.  Plaintiff, Antwann Simpson, is an individual citizen and resident of the Commonwealth of Pennsylvania, formerly residing at Presidential, Apt W1108, Phila., Pa. 19131.

3.  Plaintiff, Tyliah Phillips is an individual citizen and resident of the Commonwealth of Pennsylvania, currently residing at Presidential, Apt J0803, Phila., Pa. 19131.

4.  Defendant Post Brothers and Post Commercial Real Estate ("collectively "Post Brothers") are alleged and therefore averred to be Pennsylvania Corporations, with their principal place of business at 1021 N Hancock Steet, Philadelphia, PA, 19123, being duly authorized to and conducting business in the Commonwealth of Pennsylvania including the City and County of Philadelphia, Pennsylvania.

1

5.    Defendant Post Brothers acquired Presidential in 2012. Presidential is comprised of four apartment buildings, as well as a 41,000-square-foot amenity center and an office building, 3901 City Ave., Philadelphia, PA, 19131.

6.    Presidential has approximately 1,000 rental apartment units and was constructed prior to 1978.

7.    On or about August 18, 2020, Plaintiffs, Willingham and Simpson executed a lease at the Presidential, 3901 Presidential Ave., Philadelphia, PA 19131. A copy of this lease is attached hereto as Exhibit "1."

8.    On or about September 13, 2021, Plaintiff, Tyliah Phillips executed a lease at the Presidential, 3901 Presidential Ave., Philadelphia, PA 19131. A copy of this lease is attached hereto as Exhibit "2."

9.    Plaintiffs, Willingham and Simpson continuously resided in their apartment owned and managed by Post Brothers at the Presidential from August 18, 2020 to November 2, 2022.

10.    Plaintiff, Tyliah Phillips continuously resided in her apartment owned and managed by Post Brothers at Presidential from September 13, 2021 to November 2, 2022.

11.    From April 1, 2021 to November 1, 2022, while Plaintiffs Willingham and Simpson were residents, Post Brothers owned and managed the Presidential.

12.    From September 13, 2021 November 1, 2022, while Plaintiff Phillips was a resident, Post Brothers owned and managed the Presidential.

13.    On October 1, 2020, the City of Philadelphia amended its Lead Disclosure and Certification Ordinance (the "Ordinance'), a/k/a as the Lead Paint Disclosure, to require all residential property owners who own property in the City of Philadelphia, known as targeted properties, to be tested for lead.

14.    Presidential is considered Target Housing under the Ordinance.

15.     The Ordinance provides that such property owners in the 19131 zip code, including Defendant Post, were required to provide a lead certification to all existing tenants no later than April 1, 2021.

16.     The Ordinance further provides that property owners were required to provide a lead certification to all new tenants at the time of entering into a lease agreement with such new tenants.

17.     Specifically, Section 6-803 of the Lead Paint Disclosure Ordinance provides that, "No rental license under Chapter 9-3900 shall be issued or renewed to a lessor with respect to any Targeted Housing, and no lessor shall enter into a lease agreement with a lessee to rent any Targeted Housing, or a unit in such Targeted Housing, unless (1) he or she provides the lessee with a valid certification prepared by a certified lead inspector stating that the property is either lead free or lead safe; (.2) the lessee acknowledges receipt of the certification by signing a copy; [and] (.3) the lessor has provided to the Department of Public Health a copy of such certification."

18.     Plaintiffs Willingham and Simpson were not provided with a lead certification by Post Brothers on April 1, 2021 as required by the Ordinance.

19.     Plaintiff Phillips was not provided with a lead certification at the time she executed the lease agreement on September 13, 2021  as required by the Ordinance.

## Class Action Allegations

20.     Plaintiffs bring this action on behalf of themselves and on behalf of a class of similarly situated persons as a class action pursuant to the Pennsylvania Rules of Civil Procedure.

21.     Defendants have continuously, systematically, wrongfully and wantonly violated the Philadelphia Lead Law.

22.     Plaintiffs seek to represent all tenants of the Presidential from April 1, 2021 to November 1, 2022.

3

23. Plaintiffs reserve the right to amend the definition and/or identify subclasses upon completion of class certification.

24. The members of the class are so numerous that the joinder of them is impracticable.

25. A class action is the only practicable means available to prevent the defendant, Post Brothers, from engaging in the continuous and systematic illegal and unlawful conduct under the Philadelphia Lead Paint Disclosure Ordinance and to remedy the harm created by this illegal and unlawful conduct.

26. The questions of law and fact are common to the members of the class which Plaintiffs seek to represent.

27. The questions of law and fact common to the members of the class predominate over questions that may affect only individual members.

28. The common questions of law and fact which control this litigation predominate over any individual issues include, but are not limited to:

    a) Whether each member of the class resided in an apartment at Presidential for any time period during April 1, 2021 to November 1, 2022;

    b) Whether each class member was provided or received a lead certification during the specified time period;

    c) Whether Defendant was obligated to provide a lead certification by April 1, 2021 to all existing tenants;

    d) Whether Defendant was obligated, at the time of executing a lease with new tenants, to provide a lead certification;

    e) Whether Defendant violated Section 6-800 of the Philadelphia Lead Paint Ordinance; and

    f) Whether Defendant violated Section 6-803(3) of the Philadelphia Lead Paint Ordinance.

29.     Plaintiffs are members of the class that they seek to represent.

30.     Plaintiffs' claims are typical of the claims of other members of the class which they seek to represent.

31.     Plaintiffs are well qualified to act as class representatives.

32.     Plaintiffs will fairly and adequately protect the interests of the members of the class.

33.     Plaintiffs have no interest that is adverse or antagonistic to the interests of the members of the class.

34.     Plaintiffs are committed to prosecuting the class action.

35.     Plaintiffs have retained competent counsel who are experienced in litigation of this nature.

36.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

37.     Joinder of all class matters is impracticable and the likelihood of individual class members prosecuting separate claims is remote due.

38.     The expense and burden of individual litigation makes it unlikely that a substantial member of the class members will individually seek redress for the wrongs done to them.

39.     It is desirable for all concerned to concentrate the litigation in this particular forum for adjudication.

40.     Plaintiffs anticipate no difficulty in the management of this action as a class action.

41.     The prosecution of separate actions by individual class members would create the risk of bearing inconsistent determinations with incompatible standards of conduct and which could prejudice non-parties to any adjudication or substantially impede their ability to protect their own interests because of the overriding common questions of law and fact involved in the matter.

42.     Prosecution of these claims as a class action will result in an orderly and expeditious administration of the claims and will foster economies of time, effort and expense.

## COUNT I

### VIOLATION OF THE PHILADELPHIA CODE
### CHAPTER 6-400 AND CHAPTER 6-800, ET SEQ.

43.　　Plaintiffs hereby incorporate by reference the foregoing Paragraphs 1 through 42 of this Complaint as though same were fully set forth herein.

44.　　Section 6-403(4)(a) states "The Dept. of Public Health upon application by any owner or person in control of the premises…shall test or cause to be tested said premises to determine the presence of lead-based coding.  The Department shall make such additional determinations as to enable the Department to issue a Certificate that the premises is or is not in compliance with the Section of the Philadelphia Code".

45.　　The Code further states in Subsection (b) "Any tenant may enforce the provisions of Section 6-403(5)(a) in the Philadelphia Court of Common Pleas, the Philadelphia Municipal Court or any other court having jurisdiction.  A prevailing tenant shall be entitled to actual damages and to not less than treble the monthly rent for each violation, plus attorney's fees and cost."

46.　　The Code Section 6-800 compels all residential landlords who own property built prior to 1978 (even if renovated thereafter) to obtain a Certification that the property is lead safe.

47.　　Chapter 6-803 states "No residential license under Chapter 9-3900 shall be issued or renewed to a lessor with respect to any targeted housing and no lessor shall enter into a lease agreement with lessee (other than a renewal lease), lessee to rent any targeted housing or a unit in such targeted housing unless (1) he or she provides the lessee with a valid certification prepared by a certified lead inspector stating that the property is either lead free or lead safe; and (2) the lessee acknowledges receipt of the certification by signing a copy; and (3) the lessor has provided to the Dept. of Public Health a copy of such certification."

48.     The ordinance specifically requires all landlords who have residential properties which are not exempt to be tested for lead paint by a certain time period in Philadelphia County.

49.     The legislature further requires the test findings to be uploaded to the City of Philadelphia, Public Health Department's website.

50.     The legislature further requires the owner of residential property to provide a lead safe or lead-free certificate to the residential tenant.

51.     Without the registration of the lead free or lead safe certificate with the Philadelphia Health Dept., the Dept. of Licenses & Inspections should not allow the residential owner of real property in Philadelphia County to obtain a residential rental license or renew its residential rental license.

52.     The Philadelphia Code, Section 6-803(b) further states a valid certification that a property is lead safe under this section shall state that the certified lead inspector determined that the property or unit was free of any deteriorated paint and that the interior dust samples were collected in compliance with the EPA regulations, including 40 CFR, Section 745.227….and were found not to contain lead contamination dust as defined in this Chapter.

53.     Defendant, Post Brothers, failed to comply with the provisions requiring it to provide lead safe certifications to its current tenants  residing at Presidential on April 1, 2022, and to new tenants who signed a lease between April 2, 2021 and November 1, 2022 .

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Class, respectfully request that the Court enter Judgement in their favor and against Defendant, as follows:

A.     An Order certifying the proposed Class, as requested herein, designating Plaintiffs as Class representatives, and appointing Plaintiffs' undersigned attorneys as Counsel for the Class;

B.     Damages for any harm caused by the failure to provide the certification;

C.    Abatement and refund of rent for any period in which Plaintiffs and class members who occupied a leased apartment at Presidential City without a required certification having been provided from April 1, 2021 to November 1, 2022;

D.    treble damages of the monthly rent for each violation; and

E.    attorney's fees and costs.

**ABRAMSON & DENENBERG, P.C.**

By:    /s/ David Denenberg
       /s/ Alan Denenberg
       ALAN DENENBERG, Esquire
       DAVID DENENBERG, Esquire
       PA Attorney ID: 54161
       1315 Walnut Street, Suite 500
       Philadelphia, PA 19107
       (215) 546-1345


**SHUB & JOHNS LLC**

By:    /s/ Jonathan Shub
       JONATHAN SHUB, Esquire (PA ID 53965)
       BENJAMIN F. JOHNS, Esquire (PA ID 201373)
       SAMANTHA E. HOLBROOK, Esquire (PA ID 311829)
       Four Tower Bridge
       200 Barr Harbor Drive, Suite 400
       Conshohocken, PA  19428
       (610) 477-8380

       *Attorneys for Plaintiffs*

# EXHIBIT "1"

## APARTMENT MOVE-IN CHECKLIST
*(Each Tenant signs, and receives a copy of this page)*

**Apartment Community:**     **Presidential City**
**Apartment No:**              **W1108**

| | |
|---|---|
| Tenant 1 Name:   Ali Wiliingham | Guarantor 1 Name: |
| Tenant 2 Name:   Antwann Simpson | Guarantor 2 Name: |
| Tenant 3 Name: | Guarantor 3 Name: |
| Tenant 4 Name: | Guarantor 4 Name: |
| Tenant 5 Name: | Guarantor 5 Name: |
| Tenant 6 Name: | Guarantor 6 Name: |

Move-In Documents in this Package:   *Initial each item to verify they have been completed and signed:*
**X** Residential Lease
**X** Pet Addendum
**X** Condominium Waiver
**X** Lead-Based Paint Disclosure
**X** Drug-Free/Crime-Free Housing Addendum
**X** Bed Bug Addendum
**X** Apartment Inspection Report (*to be filled out by Tenant and returned within 1 week of move-in*)

Number of keys issued:

| | | |
|---|---|---|
| Building Front Door: | Keys | 2Fobs |
| Back Door / Other: | Keys | |
| Apartment Entry Door: | 2Keys | |
| Mailbox: | 2Keys | |

ALL TENANTS AND GUARANTORS MUST SIGN:
*I acknowledge that I have received and understand my copy of the Lease and all Addenda listed above. I understand that if I don't return all keys upon moving out I will be charged $25 for each key and $50 for each key fob.*

| | |
|---|---|
| Tenant 1      Date Signed | Guarantor 1      Date Signed |
| Tenant 2      Date Signed | Guarantor 2      Date Signed |
| Tenant 3      Date Signed | Guarantor 3      Date Signed |
| Tenant 4      Date Signed | Guarantor 4      Date Signed |
| Tenant 5      Date Signed | Guarantor 5      Date Signed |
| Tenant 6      Date Signed | Guarantor 6      Date Signed |
| Authorized Agent for Landlord      Date Signed | |

## RESIDENTIAL LEASE

**THIS LEASE** dated August 17, 2020, is a legally binding contract made between Ali Wiliingham and Antwann Simpson ("Tenant") and Post Presidential Property Owner LLC ("Landlord"), and Post Commercial Real Estate LLC ("Agent for Landlord"), to rent W1108 (the "Apartment") at Presidential City ("the APARTMENT COMMUNITY") located at the address Presidential City Philadelphia, PA 19131 on the following terms and conditions, for use as a private residence only. The term "Tenant" in this Lease refers to all parties guaranteeing payment.  No other occupants are permitted, except Tenant's named dependents: N/A.  Persons not listed above may not stay in the apartment for more than seven (7) consecutive days and only with the Tenant present.

**1. OFFER TO LEASE**:  Landlord acknowledges receipt of the monies listed below. If Landlord does not sign and accept this Lease within five (5) days of the date above, Tenant's monies shall be refunded, less $55.00 for the credit check/processing fee:

| Rent and Additional Rent | Monthly Recurring Amount |
|---|---|
| Base Rent | $3,385.00 |
| Pet Fee | $50.00 |
| Storage Fee | $0.00 |
| Parking Fee | $65.00 |
| TOTAL: | $3,500.00 |

**2. LEASE TERM**: This Lease starts at 12:00 Noon on 08/19/2020 and ends at 12:00 noon on 08/18/2021.  Resident will pay $1,354.00 for the first month's rent, which is due on or before 08/19/2020.

**3. RENT**:

    **a. All Rent and Additional Rent payments must be received by Landlord on or before the 1st day of each month without demand**, whether the 1st is a weekday, weekend or holiday.  Rent may be paid online at www.RENTCafe.com., or by check made to Post Presidential Property Owner LLC and either dropped in the labeled box outside the Property Manager's Office at the Apartment Community, or mailed to:

        Post Presidential Property Owner LLC
        P.O. Box 44131
        Philadelphia PA 19144

    **b.** Tenant will pay to Landlord a prepaid rent in the amount of $3,385.00, which is due on or before 08/19/2020.

**4. LATE PAYMENTS AND RETURNED CHECKS**: Time is of the essence of this Lease. If Rent payment is not received in full by the 5th day of any month, or if Tenant's check is returned unpaid for insufficient funds, Tenant agrees to pay **ten percent** (10%) of the monthly Rent and an **additional** $50.00 for each returned check. All payments will be applied against utility payments before Rent. All late payments shall be made using cashier's checks, certified check.  If more than one of Tenant's checks is returned unpaid, all future payments shall be made using cashier's checks, certified check. If Tenant submits a rent payment to Landlord using a check which is returned unpaid by Tenant's bank for insufficient funds on two (2) occasions at any time during the Lease, it is a breach of the Lease. Landlord may report any late payment or breach of this Lease to a credit or tenant reporting agency, which may create a negative credit record on Tenant.

*Initials:*  Tenant 1 _AW_  Tenant 2 _AS_  Tenant 3 _____  Tenant 4 _____  Tenant 5 _____  Tenant 6 _____

*Agent for Landlord* _JM_

**5. SECURITY DEPOSIT**:  Tenant has paid to Landlord a Security Deposit of $1,000.00, and a Pet Deposit of $500.00. Tenant's Security Deposit will be returned to Tenant within thirty (30) days after the end of the lease term if: (a) all obligations of Tenant have been performed; (b) Apartment is not damaged and is left in its original condition, normal wear and tear excepted; and (c) Tenant has provided a valid forwarding address.  Tenant agrees not to apply the Security Deposit to any rent payment.  Landlord will deposit Security deposit monies in an interest-bearing account as required by law at the Customer's Bank located at 99 Bridge St, Phoenixville, PA 19460. Landlord will notify Tenant if security deposits are moved to another location or to another financial institution. Landlord shall have thirty (30) days after the end of the lease term to give Tenant written notice of Landlord's intent to impose a claim for damages on the deposit with the reason(s) for imposing the claims.

**6. UTILITIES AND ADDITIONAL RENT**: Landlord and Tenant are each responsible for paying for the following utilities and other fees, all of which are Additional Rent:

| Service | Responsibility | Amount |
|---|---|---|
| Electric | **Resident** | **Sub-metered** |
| Cooking Gas | **N/A** | **$0.00** |
| Heat | **Resident** | **Sub-metered** |
| AC | **Resident** | **Sub-metered** |
| Water | **Resident** | **$50.00** |
| Hot Water | **Resident** | **$30.00** |
| Waste | **Landlord** | **$0.00** |
| Refuse | **Landlord** | **$0.00** |
| Recyclables | **Landlord** | **$0.00** |
| Cable | **N/A** | **$0.00** |
| Laundry | **N/A** | **$0.00** |
| Internet | **N/A** | **$0.00** |
| General Utility Fee | **N/A** | **$0.00** |
| Additional Roommate Fee | **N/A** | **$0.00** |
| Furniture Rental | **N/A** | **$0.00** |

Tenant is required to establish electrical service account with utility provider effective on the date of move-in and for duration of tenancy.  If Tenant fails to establish the account, Landlord will invoice Tenant for electricity plus a $25.00 fee as Additional Rent for each billing period.

**7. JOINT AND SEVERAL RESPONSIBILITY FOR LEASE OBLIGATIONS**: Each Tenant who signs this Lease is jointly and severally responsible to fulfill all of the obligations of this Lease, including any fees, damages and other costs and to pay the rent in full.  This means that each individual Tenant is responsible for full payment of sums due.

**8. INCORRECT OR FALSE INFORMATION IN APPLICATION**: If Tenant or Guarantor provided false or incorrect information to Landlord in the rental application, it is a breach of this Lease and Landlord may terminate the Lease and/or sue Tenant for possession and any losses or damages.

*Initials:*   *Tenant 1*  hw   *Tenant 2*  AS   *Tenant 3* _____   *Tenant 4* _____   *Tenant 5* _____   *Tenant 6* _____

*Agent for Landlord*  JM

**9. USE AND OCCUPANCY**:  The Apartment shall be used for residential purposes only and shall be occupied only by Tenant and named dependents.  No other occupants are permitted.  Guests of Tenant may stay in the Apartment up to seven (7) consecutive days provided that Tenant is present.  No other persons may stay in the Apartment without Landlord's prior written consent.  The Apartment or Apartment Community shall not be used in violation of any applicable laws or ordinances or so as to interfere with the quiet enjoyment, health or safety of other residents of the Apartment Community.

**10. PETS**: Tenant may have domestic animals as pets, provided that an executed Pet Addendum is attached to this Lease.  No other animals of any kind shall be permitted in the Apartment without the written consent of Landlord. All dogs must pass the AKC Good Canine Citizen training program as evidenced by a certificate prior to move-in.

**11. LOCK-OUT:**  Landlord will charge $75 per occurrence as Additional Rent to admit Tenant to the Apartment after normal business hours.  Tenant must provide appropriate identification.  **Under no circumstances will Landlord admit any non-tenant to the apartment for any reason**.

**12. TENANT'S INSURANCE**: Tenant shall obtain a valid Renter's Policy of Insurance to  cover Tenant's personal liability for claims by Tenant's visitors, licensees and others for accidents within and damage to the Apartment and the Apartment Community caused by Tenant.  **Tenant shall provide evidence of liability insurance to Landlord prior to move-in and shall maintain liability coverage through-out the term of the Lease.  Failure to do so shall constitute a breach of this Lease**.

Tenant's Renter's Policy must include comprehensive general liability insurance for bodily injury and property damage with a combined single limit of at least $300,000.  If Landlord's insurance is found to apply to any loss or damage covered by Tenant's insurance, then: (a) Landlord's insurance and Landlord's obligation to pay shall be considered excess coverage; (b) Tenant's insurance must be fully used up before any claim can be made against Landlord or Landlord's insurance.

Tenant may obtain liability insurance through the **Resident Shield program available from Rent Café** or through an outside insurance company of Tenant's choice.  If Tenant uses an outside insurer, Tenant shall list the Landlord as an Interested Party for immediate notice of cancellation, non-renewal or material change in Tenant's policy as follows:

> Post Presidential Property Owner LLC
> P.O. Box 3687
> Coppell TX 75019

**If Tenant's liability insurance lapses or is cancelled for any reason, Tenant will be automatically enrolled in Landlord's Master Policy Program and billed $25 per month as Additional Rent.**

**Tenant acknowledges that Landlord's insurance does not cover personal property of Tenant, Tenant's guests, licensees or invitees, whether such loss is caused by fire, theft, rain, war, acts of God, acts of others and any other causes, nor shall Landlord be held liable for such losses.  Insurance coverage for Tenant's personal property is at Tenant's sole option.**

**Tenant and Landlord agree that subrogation is allowed by all parties and that this Lease supersedes any language to the contrary in the Lease.  This means that Landlord's insurance carrier may sue Tenant for any losses it pays as a result of Tenant's negligence, and Tenant's insurance carrier may sue Landlord for losses it pays as a result of Landlord's negligence.**

*Initials:*  *Tenant 1* ___  *Tenant 2* ___  *Tenant 3* ___  *Tenant 4* ___  *Tenant 5* ___  *Tenant 6* ___

*Agent for Landlord* ___

**13. MOVE-IN AND MOVE-OUT:** Tenant may move-in to the Apartment on the first date of this Lease and must coordinate building access and use of the elevator with Landlord. On or before the last date of the Lease, Tenant shall vacate the Apartment, return all keys and key fobs to Landlord, and remove all possessions and any trash. Tenant shall be charged $25 for each key and $50 for each key fob that is not returned in working order. Tenant is responsible to cancel any utilities in Tenant's name on or before move-out.

**14. SUBLETTING PROHIBITED**: Tenant may not sublet the Apartment, charge anyone not named in the Lease any fee to use the Apartment, or assign this Lease to another person without Landlord's express written permission which may be granted at Landlord's sole discretion. "Sublet" shall include any use by others not named in this Lease. Any subletting by Tenant without Landlord's permission is a violation of the Lease. Any proposed Sub-Tenant shall be required to complete a rental application and meet all of Landlord's rental standards. Tenant shall remain responsible for all Lease obligations and liabilities, shall be required to pay a $250 subletting fee to cover Landlord's handling expenses and shall forfeit his or her Security Deposit in full. Landlord's decision to allow or deny subletting on one occasion has no bearing on Landlord's future subletting decisions.

**15. RENEWAL AND TERMINATION**: Tenant or Landlord may terminate this Lease at the end of the Lease Term by giving the other party a minimum of sixty (60) days' written notice prior to the end of the Term. Landlord may increase the monthly Base Rent and/or Additional Rent (the "Monthly Rent") for the new Lease Term by giving Tenant written notice of the new Monthly Rent at least seventy-five (75) days prior to the end of the current Term. If Tenant fails to give notice of termination in writing per Section 24 within fifteen (15) days' of receipt of rent increase notice and at least sixty (60) days prior to the end of the current Lease Term, the Lease will automatically renew for an additional twelve (12) month Lease Term at the new Monthly Rent. No month-to-month Lease Term option is available, with the exception of Armed Forces personnel per Section 17.

**16. EARLY TERMINATION**: Tenant may terminate this Lease prior to the end of the Lease Term and be relieved of further liability for rent for the unexpired term by (a) giving Landlord at least sixty (60) days prior written notice; and (b) paying all monies due through the date of termination; and (c) paying two months' rent as liquidated damages; and (d) forfeiting security deposit and last month's rent. **Any move-in concession given by Landlord must be reimbursed at early termination.** Tenant's election for early termination shall not relieve Tenant's obligations and liability for damage to the Apartment or Apartment Community.

**17. ARMED FORCES EXCEPTION:** Any member of the United States Armed Forces who is required to move pursuant to a permanent change of station orders to depart 35 miles or more from the location of the rental premises or who is prematurely or involuntarily discharged or released from active duty with the United States Armed Forces may terminate the Lease by providing Landlord with a written notice of termination effective not less than thirty (30) days after the Landlord's receipt of the notice. The notice must be accompanied by (a) a copy of the official military orders; or (b) a written verification signed by the member's commanding officer.

In the event a member of the United States Armed Forces dies during active duty, an adult member of his immediate family may terminate his Lease by providing Landlord with a written notice of termination effective at least thirty (30) days after the Landlord's receipt of the notice. The notice to Landlord must include (a) a copy of the official military orders; or (b) a written verification signed by the member's Commanding Officer. Upon termination of a Lease by a member of the United States Armed Forces under this section, the Tenant is liable for the rent due prorated to the effective date of the termination payable at such time as would have otherwise been required by the terms of the Lease.

*Initials:*  *Tenant 1* ___  *Tenant 2* ___  *Tenant 3* ___  *Tenant 4* ___  *Tenant 5* ___  *Tenant 6* ___

*Agent for Landlord* ___

**18. LANDLORD'S RIGHT OF ACCESS**: Landlord may enter Tenant's Apartment during reasonable hours with 24 hours prior notice to Tenant for inspection, repairs, display to prospective tenants, maintenance and improvements. In case of emergency, Landlord may enter without prior notice.  Landlord may, but shall not be required to, enter at any time to protect life and to prevent damage to property.

**19. APARTMENT COMMUNITY RULES AND REGULATIONS**: Tenant, Tenant's guests, licensees and invitees shall comply with all governmental laws and regulations and with the Apartment Community Rules and Regulations which are attached to and made a part of this Lease.  Landlord may change the Rules and Regulations during the term of this Lease.  Violation of the Rules and Regulations is a breach of this Lease.

**20.  TENANT'S CARE OF PROPERTY**:  Tenant has inspected and accepts the Apartment in "as is" condition. Tenant agrees to keep and, at the end of the term, return the Apartment, appliances, fixtures and any furniture rented from Landlord in a clean and sanitary condition and in good repair.  Tenant agrees to: (a) keep the Apartment clean and safe: (b) dispose of all trash, garbage and any other waste materials as required by the Landlord and the law; and (c) use reasonable care when utilizing any of the electrical, plumbing, heating, air conditioning, ventilation, elevators or other facilities or appliances at the Apartment and Apartment Community.  **Tenant agrees not to**: (a) use the Apartment for gatherings of excessive numbers of people; (b) keep any flammable, hazardous or explosive materials at the Apartment or Apartment Community; (c) destroy, damage or deface any part of the Apartment or Apartment Community; (d) alter the Apartment in any way, including apply paint or wallpaper, install permanent shelving, redecorate or make any structural changes whatsoever to the Apartment nor remove any fixtures, appliances or Landlord-owned furniture; or (e) perform or cause others to perform any repairs or alterations.

**21. MAINTENANCE AND REPAIRS**:  Tenant agrees to notify Landlord promptly in writing of any repairs needed and of any potentially harmful health or environmental conditions at the premises. Landlord will make repairs required by law to the Apartment with reasonable promptness after receipt of written notice. If any damage beyond normal wear and tear is caused by Tenant, Tenant's guests, licensees, invitees or pets, Tenant agrees to pay Landlord the full cost of repair within five (5) days of demand.

**22. PROPERTY CONTACT INFORMATION**:

> <u>Rental Payments</u>:
> Name:  Thomas Maduzia                Email: tmaduzia@postcre.com
> Phone:                                Website: www.rentcafe.com
>
> <u>Maintenance Requests</u>:
> Phone:  (215) 475-5933          Website: www.rentcafe.com
>
> <u>Emergency Maintenance Contact</u>:
> Phone:  (215) 586-4116                    Website: www.rentcafe.com

*Initials:*   *Tenant 1* __AW__   *Tenant 2* __AS__   *Tenant 3* _____   *Tenant 4* _____   *Tenant 5* _____   *Tenant 6* _____

*Agent for Landlord* __TM__

**23. INJURIES AND DAMAGE; INDEMNIFICATION AND HOLD HARMLESS**: Tenant agrees to release Landlord, its agents, employees, shareholders, directors, officers, and other representatives, and hereby waive any claims against the Owner(s) of the real property described in the Lease, their agents, employees, shareholders, directors, officers, partners and other representatives ("the Landlord Representatives"), from any and all liability for claims or causes of action arising from damages or injury to any person or property in or about the Apartment and the Apartment Community, including but not limited to attorney's fees, no matter how occasioned or caused, or for injury to any person or property, including those caused by, in whole or in part, the negligent acts or omissions of the Landlord Parties, the Landlord's contractors or subcontractors, anyone directly or indirectly employed by Landlord or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by the Landlord Representative. Tenant further agrees to indemnify, defend and hold harmless the Landlord Representatives from any and all actions of Tenant, their servants, agents, guests, invitees or licensees.

Without limiting the foregoing, Tenant agrees that the Landlord Representatives shall not be liable for any injuries or damage to persons or property wholly or partially caused by any of the following: (a) entrustment of any property to Landlord or its employees or agents; (b) theft, burglary, assault, vandalism or other crimes caused by other Tenants or persons; (c) steam, gas, electricity, falling plaster, leakage of waste from pipes, rain, snow, malfunctions of appliances, leakage or dampness of any nature whatsoever, regardless of source; (d) actions taken or omissions of other Tenants; (e) interference with light, view, or other incorporeal hereditaments; (f) operations and construction of any public or quasi-public work; (g) any patent or latent defect in the building; (h) use by Tenant, Tenant's licensees, invitees or guests of any community room, storeroom, laundry room, clubhouse, parking lot, parking garage, swimming pool or any other auxiliary facility furnished by Landlord for Tenant's use.

Tenant agrees to indemnify the Landlord Representatives against all losses incurred by Landlord as a result of: (a) Tenant's failure to comply with this Lease; (b) any damage or injury happening in or about the Apartment or Apartment Community to Tenant, Occupants named in the Lease, Tenant's licensees, invitees or guests, or such persons' property; (c) damage or loss in or about the Apartment or Apartment Community caused by Tenant, Tenant's licensees, invitees or guests; (d) Tenant's failure to comply with any requirements imposed by any governmental authority; or (e) any judgment, lien or other encumbrance filed against the Apartment or the Apartment Community as a result of Tenant's action.

**24.  NOTICES**: All notices made under this Lease from Landlord to Tenant or from Tenant to Landlord shall be made in writing and shall be either delivered personally to the Tenant's apartment or to the Landlord's management office on the premises, or sent by 1st class mail to the addresses provided for rental payments on page 1 of the Lease. Landlord shall notify Guarantor of any breach of this Lease by Tenant during the first year of this Lease only.

**25.  NOTICE OF EXTENDED ABSENCE:** Tenant shall notify Landlord of any extended absence of more than seven (7) days from the Apartment on or before the first day of Tenant's absence.  Failure to notify Landlord shall be considered abandonment of the property and grounds for Lease termination.

**26. ABANDONMENT OF APARTMENT AND PERSONAL PROPERTY**: Tenant shall not abandon the Apart-ment. Tenant must notify Landlord in writing within ten (10) days of lease termination or abandonment of Tenant's intent to collect any personal property remaining in the Apartment or storage areas.  Landlord will retain Tenant's property for up to thirty (30) days at location of Landlord's choice.  If Tenant fails to notify Landlord within ten (10) days of termination, or fails to collect the property within thirty (30) days, Tenant's property shall be considered abandoned and Landlord may dispose of property without further notice.  Tenant must pay Landlord's cost of moving, storage and disposal of Tenant's personal property.  Landlord shall not be liable for any injury or damage arising out of or resulting from any reasonable disposal of such property.

*Initials:*   *Tenant 1* ᴿᴺ᷌᷌    *Tenant 2* ᴬˢ    *Tenant 3* _____    *Tenant 4* _____    *Tenant 5* _____    *Tenant 6* _____

*Agent for Landlord* ᴶᴹ᷌᷌

**27. DESTRUCTION AND EMINENT DOMAIN**: If Tenant, Tenant's guests, licensees or invitees cause damage by fire or any other means, the Lease will remain in effect and Tenant will remain obligated to pay rent, even if the property is uninhabitable.  If the Apartment is made uninhabitable for more than thirty (30) days by fire or any other means not the fault of the Tenant, then Tenant may terminate this Lease with written notice to Landlord.  If the Apartment is taken by or conveyed to a Governmental Authority in whole or part by eminent domain, which is the government's right to take property for public use, or is destroyed by any extraordinary natural or man-made cause that is reasonably beyond the Landlord's control, in whole or in part, the Lease will terminate. Tenant releases to Landlord all rights to any compensation paid by a Governmental Authority.

**28. SECURITY**: **Tenant hereby agrees and acknowledges that Landlord and Landlord's agent shall not provide and shall have no duty to provide any security services to Tenant, Tenant's guests, licensees or invitees or to the apartment community. Tenant shall look solely to the public police force for security protection.** Tenant agrees and acknowledges that protection against criminal action is not within the power of Landlord and Landlord's Agent, and, even if from time to time Landlord provides security services those services cannot be relied upon by Tenant and shall not constitute a waiver of, or in any manner modify, the Lease. Landlord and Landlord's Agent shall not be liable for failure to provide adequate security services or for criminal or wrongful actions by others against Tenant, Tenant's guests, licensees, or invitees.

**29. ENTIRE AGREEMENT**: This Lease constitutes the entire agreement between the Landlord and Tenant.  No other representations, inducements, promises or agreements, oral or otherwise, shall have any force or effect.  Any modifications to this Lease must be in writing and signed by Landlord and Tenant in order to be valid.

**Notice to Tenant: this Lease contains waivers of consumer rights.  Tenant acknowledges that he waives certain rights by signing this Lease.**  Tenant agrees to waive any notice including the ten (10) or thirty (30) day notice period which is contained in Section 501 of the Landlord and Tenant Act of 1951, as amended, 68 P.S. 250.501, or any other notice period established by law.

**30.  VIOLATIONS OF LEASE**:  Tenant violates the Lease if he fails to fulfill all of the obligations agreed to in the Lease.

Violations include those described in this Lease, which include but are not limited to:
- Failure to pay Rent and Additional Rent when due;
- Submitting two (2) Rent checks which are returned unpaid for insufficient funds;
- Failure to leave the Apartment at the end of the Lease Term;
- Abandoning the Apartment prior to the end of the Lease Term without Landlord permission;
- Failure to follow the Apartment Community Rules and Regulations;
- Damaging or failing to care for the property as agreed in this Lease;
- Failure to obtain and keep a Renter's Insurance policy in place throughout the Lease;
- Violating the sub-letting provision or using the Apartment for non-residential purposes;
- Failing to obey the Drug-Free/Crime-Free Housing Addendum requirements.

If Tenant breaches or violates this Lease, Landlord may terminate the Lease, and/or Tenant may lose part or all of the Security Deposit, and/or Landlord may sue to evict the Tenant, and/or Landlord may sue the Tenant for damages.  Landlord may also sue Tenant for recovery of expenses.  If Tenant violates the Lease, each Tenant agrees to waive notice to quit.  This means that Landlord may file a complaint in court asking for an order evicting each Tenant from the Apartment without giving each Tenant prior notice to quit.  Landlord may only evict Tenant through court action.  Failure of Landlord to insist upon strict compliance with the terms of this Lease shall not constitute a waiver of Landlord's right to act on any violation of the Lease.

*Initials:  Tenant 1* _kW_  *Tenant 2* _AS_  *Tenant 3* _____  *Tenant 4* _____  *Tenant 5* _____  *Tenant 6* _____

*Agent for Landlord* _JM_

**31. REMEDIES**:
**Landlord may file suit against Tenant to enforce the terms of the lease without notice to Tenant.** All remedies under this Lease at law or in equity shall be cumulative. If Landlord institutes legal action to enforce this Lease, Tenant shall pay reasonable attorney's fees in addition to court and other costs to Landlord. Any move-in concession given must be reimbursed at that time due to breach in Lease. In any action brought by Tenant against Landlord in which Landlord prevails, Tenant shall pay all of Landlord's legal fees and related expenses. Landlord and Tenant waive the right to a jury trial for any claim or matter concerning this Lease or the Apartment. **32. LANDLORD'S RIGHT TO MORTGAGE THE LEASED PREMISES (SUBORDINATION):** This Lease does not have any effect upon the rights of Landlord's mortgage company. Tenant's rights shall at all times be junior and subordinate to any deed to secure debt or other instrument which is now or is later placed on the premises of which the Apartment is part to secure a debt; and if requested, Tenant shall execute promptly any certificate that Landlord may request to specifically implement the subordination provided for in this paragraph.

**33. ADDENDA**: The following Addenda are attached to and made a part of this Lease:
- Drug-Free/Crime-Free Housing Addendum
- Apartment Community Rules and Regulations
- Lead-Based Paint Disclosure
- Condominium Waiver
- Bed Bug Addendum
- Pet Addendum
- Guarantor Addendum (if applicable)

**34. NOTICE - STATUTORY NOTIFICATION / RADON**: In accordance with state law, Landlord is required to notify you of the existence of radon gas in Pennsylvania. This notice in no way obligates the Landlord or Landlord's Agent, beyond the requirement of notice. Radon gas is a naturally occurring radioactive gas that is odorless, tasteless and colorless. When radon gas has accumulated in a building in sufficient quantities, it may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Pennsylvania. Additional information regarding radon and radon testing may be obtained from your county public health unit.

**35. TITLES AND SEVERABILITY**: All section titles in this Lease are for convenience only. If any provision of this Lease is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only, without invalidating or otherwise affecting the remainder of this Lease.

**36. SPECIAL STIPULATIONS**, if any:

**LEASE EXECUTION DATE**: August 17, 2020

LANDLORD'S AGENT:         POST COMMERCIAL REAL ESTATE
                         P.O. Box 44131
                         Philadelphia, PA 19144


BY: *Tom Maduzia* _____
        Authorized Agent for Landlord         Date

---

*Initials:*  Tenant 1 _____   Tenant 2 _____   Tenant 3 _____   Tenant 4 _____   Tenant 5 _____   Tenant 6 _____

*Agent for Landlord* _____

**By signing this Lease, each Tenant agrees he has read and understood all of the agreements contained in the**

**Lease.**

ALL TENANTS MUST SIGN [JOINT AND SEVERAL]:

_____
Tenant 1                    Date Signed

_Antwann Simpson_
_____
Tenant 2                    Date Signed

_____
Tenant 3                    Date Signed

_____
Tenant 4                    Date Signed

_____
Tenant 5                    Date Signed

_____
Tenant 6                    Date Signed


**By signing this Lease, each Guarantor agrees he has read and understood all of the agreements contained in the Lease.**

Guarantor agrees to be jointly and severally liable with Tenant to fulfill Tenant's obligations arising under this Lease, including but not limited to unpaid Rent and Additional Rent as defined in the Lease, property damage, and cleaning and repair costs that exceed Tenant's security deposit.


_____
Guarantor 1                 Date Signed

_____
Guarantor 2                 Date Signed

_____
Guarantor 3                 Date Signed

_____
Guarantor 4                 Date Signed

_____
Guarantor 5                 Date Signed

_____
Guarantor 6                 Date Signed

### PET ADDENDUM TO LEASE

This Addendum is made part of the Lease dated August 17, 2020 between Ali Wiliingham and Antwann Simpson ("Tenant") and Post Presidential Property Owner LLC ("Landlord"), and Post Commercial Real Estate LLC ("Agent for Landlord"), to rent W1108 (the "Apartment") at Presidential City ("the APARTMENT COMMUNITY") located at the address Presidential City Philadelphia, PA 19131.

1.  Landlord hereby grants Tenant permission to keep, in Tenant's Apartment only, the following pets:

| Pet #1 is a: Dog | Pet #2 is a: Dog | Pet #3 is a: | Pet #4 is a: |
|---|---|---|---|
| Name: Bleu | Name: Puma | Name: | Name: |
| Breed: Miniature Pinscher | Breed: toy Fox Terrier | Breed: | Breed: |
| Weight: 15.00 | Weight: 15.00 | Weight: | Weight: |
| Color: Black | Color: Brown | Color: | Color: |

2.  No other animals or pets may be kept in the Apartment for any period without Landlord's written permission.

3.  Tenant warrants that all pets have been fully licensed and inoculated as required by state and local law. Tenant agrees to provide evidence of licensing and inoculation at Lease signing and to keep all licensing and inoculation current throughout the Lease Term.

4.      All dogs must pass the AKC Canine Good Citizen program as evidence by a completion certificate prior to move-in.

5.  Pets shall be kept under control by Tenant at all times at the Apartment Community. Dogs must be kept leashed at all times whenever outside the Apartment. Pet shall be exercised only in designated exercise areas. Tenant shall not leave pets on a patio or balcony while away from the Apartment.

6.  Tenant shall promptly collect and remove all pet waste and dispose of in designated containers at the Apartment Community. Landlord will impose a fine of $150 per incident for failure to collect and dispose of pet waste.

7.  Tenant has paid Landlord  per pet securing Tenant's performance under this Pet Addendum. All of this deposit is refundable. However, Landlord will deduct all costs and expenses incurred by Landlord to repair damage or perform extra cleaning necessitated by Tenant's pet.

8.  Resident agrees to the undersigned that by signing this Addendum, Resident shall pay a Monthly Pet Rent, herein after known as "Additional Rent" in the amount of $50.00 per month on the same date on which the Apartment Rent is due.

9.  Tenant shall insure that pets do not disturb residents of the Apartment Community or damage property. If, in Landlord's sole opinion and discretion, the pets disturb residents or causes property damage, Landlord may rescind permission to keep pets in the Apartment and require that Tenant permanently remove pets within ten (10) days after written request. Tenant's payment for damage caused by pets shall not entitle the Tenant to keep pets on the premises. Tenant's failure to permanently remove the pets or to comply with all other terms of this Pet Addendum shall constitute a breach of the Lease.

10. Tenant shall provide adequate food, water, care and supervision for pets at all times. If Landlord discovers any of Tenant's pets appear to be abandoned, neglected, abused, unattended, unsupervised, causing property damage or in need of emergency or veterinary treatment, Tenant grants Landlord the right to take such steps as Landlord in its discretion deems necessary to protect the pet, protect other persons, and prevent damage to property, including but not limited to, entry into the Apartment, removal of the pet from the Apartment Community and delivery to the county animal control department, The Humane Society, a veterinarian, or a temporary or permanent foster home.

11. Except for the pets described above, Tenant shall not keep any pets in the Apartment or within the Apartment Community without Landlord's express permission and prior execution of an additional Pet Addendum.

12. Tenant's failure to comply with the terms of this Pet Addendum or violation of any representation or assurance contained in this Pet Addendum shall constitute a breach of the Lease and/or a **$500** non-refundable penalty.

In case of conflict between the provisions of this Addendum with any provisions of the Lease, this Addendum shall govern.

ALL TENANTS SIGN – SELECT ONE:
[x]     *I have pets, and have read the policy, and I accept the terms.*
[ ]     *I do not have a pet. I understand that Landlord must give prior consent to keep any pets in the Apartment for any period.*

*Antwann Simpson*

| | |
|---|---|
| Tenant 1 | Date Signed |

| | |
|---|---|
| Tenant 2 | Date Signed |

| | |
|---|---|
| Tenant 3 | Date Signed |

| | |
|---|---|
| Tenant 4 | Date Signed |

| | |
|---|---|
| Tenant 5 | Date Signed |

| | |
|---|---|
| Tenant 6 | Date Signed |

*Tom Maduzia*

| | |
|---|---|
| Authorized Agent for Landlord | Date Signed |

| | |
|---|---|
| Guarantor 1 | Date Signed |

| | |
|---|---|
| Guarantor 1 | Date Signed |

| | |
|---|---|
| Guarantor 1 | Date Signed |

| | |
|---|---|
| Guarantor 1 | Date Signed |

| | |
|---|---|
| Guarantor 1 | Date Signed |

| | |
|---|---|
| Guarantor 1 | Date Signed |

## CONDOMINIUM WAIVER

This Addendum is made part of the Lease dated August 17, 2020 between Ali Wiliingham and Antwann Simpson ("Tenant") and Post Presidential Property Owner LLC ("Landlord"), and Post Commercial Real Estate LLC ("Agent for Landlord"), to rent W1108 (the "Apartment") at Presidential City ("the APARTMENT COMMUNITY") located at the address Presidential City Philadelphia, PA 19131.

If the Landlord elects to convert all or part of the existing Apartment Community into a condominium development, Tenant waives any and all rights to purchase a unit in the Apartment Community, including but not limited to the Apartment identified in this Lease.

This waiver is given by Tenant in consideration of:

1. An extension of the terms of the undersigned's tenancy and right of occupancy beyond the time period required by PA ST 69 Pa. C.S.A. sec. 3410 (b);
2. The undersigned entering into a Lease to purchase a unit in the said premises, when and if the Landlord converts the existing Apartment Community into a condominium development, or;
3. If Landlord converts the existing Apartment Community into a condominium development, Tenant agrees to make alternative living arrangements.

Tenant agrees he has not been influenced by any extent whatever in making this waiver by any representations or statements regarding the condition of the property or any other matters or representations made by Landlord, its assigns and/or nominees. This waiver contains the entire agreement between the parties, and the terms of this waiver are contractual and not mere recital. This Lease is assignable to a new Landlord in the event of a sale of the Apartment Community or a portion thereof.

Tenant agrees he has carefully read this waiver, understand its contents and has signed this waiver voluntarily as his own act with full knowledge of its significance, intending to be legally bound thereby.

**I acknowledge receipt of a copy of this Waiver:**

| | | | |
|---|---|---|---|
| *Antwann Simpson* | | | |
| Tenant 1 | Date Signed | Guarantor 1 | Date Signed |
| Tenant 2 | Date Signed | Guarantor 1 | Date Signed |
| Tenant 3 | Date Signed | Guarantor 1 | Date Signed |
| Tenant 4 | Date Signed | Guarantor 1 | Date Signed |
| Tenant 5 | Date Signed | Guarantor 1 | Date Signed |
| Tenant 6 | Date Signed | Guarantor 1 | Date Signed |
| *Tom Maduzia* | | | |
| Authorized Agent for Landlord | Date Signed | | |

## LEAD-BASED PAINT DISCLOSURE ADDENDUM TO LEASE

This Addendum is made part of the Lease dated August 17, 2020 between Ali Wiliingham and Antwann Simpson ("Tenant") and Post Presidential Property Owner LLC ("Landlord"), and Post Commercial Real Estate LLC ("Agent for Landlord"), to rent W1108 (the "Apartment") at Presidential City ("the APARTMENT COMMUNITY") located at the address Presidential City Philadelphia, PA 19131.

## I.    LEAD WARNING STATEMENT

Tenant is hereby notified that housing built before 1978 may contain lead-based paint.  This Apartment Community was built before 1978.  Lead from paint, paint chips and dust can pose health hazards to pregnant women and to young children, who may develop lead poisoning including permanent neurological damage, learning disabilities, reduced intelligence quotient, behavioral problems and impaired memory.  The Residential Lead-Based Hazard Reduction Act requires that any Landlord of a property built before 1978 must give each Tenant a copy of the EPA pamphlet titled "Protect Your Family from Lead in Your Home" which discusses lead poisoning prevention.

## II.    LANDLORD'S DISCLOSURE

Landlords must tell Tenants known information about lead-based paint hazards on the property, where lead-based paint hazards are, and how Landlord knows this information.  Check one:

    **A.  Landlord does not know of any lead-based paint or lead-based hazards on the property, unless stated below:**

    *JM*   The Landlord has informed Tenant of known lead-based hazards on the property; or has given Tenant a lead inspection report and risk assessment by a certified lead inspector; or has given Tenant a summary of the report prepared by a certified lead inspector and has made the original available for review.

    **B.  Landlord has no reports or records about lead-based paint or lead-based paint hazards on the property:**

    _X_   This property was built before 1978. Without a comprehensive lead inspection, conducted by a certified lead inspector, showing there is no lead paint or lead-based hazards, Tenant should assume that this property contains lead-based paint.

## III.    TENANT OPTION TO TEST FOR LEAD

Tenant has the option to have a lead inspection or lead risk assessment made at Tenant's expense.

If Tenant chooses to have a lead inspection or risk assessment, it must be done within ten (10) days of receiving this information or within one (1) week of signing the Lease.  If the lead inspection or lead assessment finds lead-based paint or lead-based paint hazards present, Tenant can terminate the Lease within two (2) business days after receiving the report. All money paid to the Landlord will be returned to the Tenant.

## VI.    TENANT ACKNOWLEDGMENT (Initial)

    (A)   *AW*   *AS*       Tenant has received the information listed by the landlord in Section II.

    (B)   *AW*   *AS*       Tenant has received and read the above LEAD WARNING STATEMENT.

    (C)   *AW*   *AS*       Tenant has received the pamphlet "Protect Your Family from Lead in Your Home."

    (D)   *AW*   *AS*       Tenant has been given the option to conduct a lead inspection

or lead risk assessment.

<u>ALL TENANTS MUST SIGN:</u>

| | | |
|---|---|---|
| *Antwann Simpson* | | |
| Tenant 1 | Date Signed | Guarantor 1 | Date Signed |
| Tenant 2 | Date Signed | Guarantor 1 | Date Signed |
| Tenant 3 | Date Signed | Guarantor 1 | Date Signed |
| Tenant 4 | Date Signed | Guarantor 1 | Date Signed |
| Tenant 5 | Date Signed | Guarantor 1 | Date Signed |
| Tenant 6 | Date Signed | Guarantor 1 | Date Signed |
| *Tom Maduzia* | | |
| Authorized Agent for Landlord | Date Signed | | |

## DRUG-FREE/CRIME-FREE HOUSING ADDENDUM TO LEASE

This Addendum is made part of the Lease dated August 17, 2020 between Ali Wiliingham and Antwann Simpson ("Tenant") and Post Presidential Property Owner LLC ("Landlord"), and Post Commercial Real Estate LLC ("Agent for Landlord"), to rent W1108 (the "Apartment") at Presidential City ("the APARTMENT COMMUNITY") located at the address Presidential City Philadelphia, PA 19131.

In consideration of the execution of a Lease for the Apartment identified in the Lease, Landlord and Tenant agree:

1. Tenant, Tenant's guests, licensees, invitees or other persons related to or affiliated with Tenant shall not engage in any criminal activity, including domestic abuse and drug-related criminal activity, on or near Apartment Community premises. "Drug-related criminal activity" means the illegal manufacture, sale, distribution use or possession with intent to manufacture, sell or distribute, or use, of a controlled substance (per §102 of the Controlled Substances Act (21 U.S.C. 802)).

2. Tenant, Tenant's guests, licensees, invitees or other persons related to or affiliated with the Tenant shall not engage in acts of violence or threats of violence, including but not limited to domestic abuse and the unlawful discharge of fire-arms, on or near the Apartment and Apartment Community premises.

3. Tenant, Tenant's guests, licensees, invitees or other persons related to or affiliated with the Tenant shall not engage in any act intended to facilitate criminal activity on or near the Apartment and Apartment Community premises.

4. Tenant will not permit the dwelling unit to be used for, or to facilitate criminal activity, regardless of whether the individual engaging in such activity is a Tenant, Tenant's guests, licensees, invitees or other person related to or affiliated with the Tenant.

5. Tenant will not engage in the manufacture, sale or distribution of illegal drugs at any location, whether on or near the Apartment and Apartment Community premises or otherwise.

6. Tenant, Tenant's guests, licensees, invitees or other persons related to or affiliated with the Tenant shall not engage in violations of Pennsylvania's alcoholic beverage laws on or near the Apartment and Apartment Community premises.

7. **Violation of the above provisions shall be a material violation of the Lease and cause for termination of tenancy.** Unless otherwise provided by law, proof of violation shall not require criminal conviction, but shall be a preponderance of the evidence.

8. In case of conflict between the provisions of this Addendum and any other provisions of the Lease, the provisions of the Addendum shall govern.

ALL TENANTS MUST SIGN:

| | | | |
|---|---|---|---|
| *Antwann Simpson* | | | |
| Tenant 1 | Date Signed | Guarantor 1 | Date Signed |
| Tenant 2 | Date Signed | Guarantor 1 | Date Signed |
| Tenant 3 | Date Signed | Guarantor 1 | Date Signed |
| Tenant 4 | Date Signed | Guarantor 1 | Date Signed |
| Tenant 5 | Date Signed | Guarantor 1 | Date Signed |
| Tenant 6 | Date Signed | Guarantor 1 | Date Signed |
| *Tom Maduzia* | | | |
| Authorized Agent for Landlord | Date Signed | | |

## BED BUG ADDENDUM TO LEASE

This Addendum is made part of the Lease dated August 17, 2020 between Ali Wiliingham and Antwann Simpson ("Tenant") and Post Presidential Property Owner LLC ("Landlord"), and Post Commercial Real Estate LLC ("Agent for Landlord"), to rent W1108 (the "Apartment") at Presidential City ("the APARTMENT COMMUNITY") located at the address Presidential City Philadelphia, PA 19131.

In consideration of the execution of a lease for the Apartment identified in the lease, Landlord and Tenant agree:

1.  Preventing bed bug infestation at the Apartment Community is an important objective that is mutually beneficial;

2.  No bed bugs were found on inspection of the Apartment;

3.  Tenant represents that (1) he is not aware of any bed bug infestation or presence in his furniture, clothing or personal property and possessions; (2) he has fully disclosed to Landlord any previous bed bug infestation; and (3) he has used a licensed pest control professional to properly treat all furniture, clothing or personal property and possessions that may have been exposed to bed bugs;

4.  Tenant acknowledges his **duty to report** any signs of bed bugs in the Apartment or the Apartment Community to Landlord promptly and in writing. Tenant understands that eliminating bed bug infestation can be accomplished if treated early;

5.  Tenant agrees to permit Landlord access to the Apartment at reasonable times and to cooperate fully with Landlord's efforts to professionally treat any infestation of bed bugs or other pests in the Apartment Community;

6.  Tenant agrees to follow the guidelines of Landlord's pest control professionals to treat his personal belongings as may be required to control infestation of bed bugs or other pests and to prevent future infestations;

7.  Tenant's failure to promptly report the presence of bed bugs in the Apartment or to cooperate fully with Landlord's pest control efforts may be found a violation of the Lease and Landlord reserves the right to charge resulting pest control expenses to Tenant.

<u>ALL TENANTS MUST SIGN:</u>

| | | | | |
|---|---|---|---|---|
| *Antwann Simpson* | | | | |
| Tenant 1 | Date Signed | | Guarantor 1 | Date Signed |
| Tenant 2 | Date Signed | | Guarantor 1 | Date Signed |
| Tenant 3 | Date Signed | | Guarantor 1 | Date Signed |
| Tenant 4 | Date Signed | | Guarantor 1 | Date Signed |
| Tenant 5 | Date Signed | | Guarantor 1 | Date Signed |
| Tenant 6 | Date Signed | | Guarantor 1 | Date Signed |
| *Tom Maduzia* | | | | |
| Authorized Agent for Landlord | Date Signed | | | |

## APARTMENT INSPECTION REPORT
*(To be filled out by Tenant and returned within 1 week of move-in)*

**Apartment Community:**     **Presidential City**
**Apartment No:**                 **W1108**

| | Excellent | Fair | Poor | Details |
|---|---|---|---|---|
| **Kitchen** | | | | |
| Cleanliness | | | | |
| Sink & Faucet | | | | |
| Stove (test) | | | | |
| Refrigerator | | | | |
| Garbage Disposal | | | | |
| Dishwasher (test) | | | | |
| Counters | | | | |
| Cabinets | | | | |
| Floor | | | | |
| Walls (paint, holes) | | | | |
| Ceiling | | | | |
| Lighting Fixtures | | | | |
| Outlets | | | | |
| Windows (paint, operation) | | | | |
| Blinds | | | | |
| | | | | |
| **Bathroom** | | | | |
| Cleanliness | | | | |
| Sink & Faucet | | | | |
| Vanity | | | | |
| Toilet (Bowl / Seat) | | | | |
| Medicine Cabinet | | | | |
| Mirror | | | | |
| Racks / Shelves / Acc. | | | | |
| Closets | | | | |
| Shower Plumbing (test) | | | | |
| Curtain Rod | | | | |
| Tub | | | | |
| Caulking | | | | |
| Tub Hardware | | | | |
| Heater | | | | |
| Door / Lock | | | | |
| Windows | | | | |
| Floor | | | | |
| Walls (paint, holes) | | | | |

| | | | | |
|---|---|---|---|---|
| Ceiling | | | | |
| Lighting Fixtures | | | | |
| Outlets | | | | |
| Windows (paint, operation) | | | | |
| Blinds | | | | |
| | | | | |
| **Bedrooms** | | | | |
| Cleanliness | | | | |
| Door / Lock | | | | |
| Closets (doors, organizers) | | | | |
| Floor | | | | |
| Walls (paint, holes) | | | | |
| Ceiling | | | | |
| Lighting Fixtures | | | | |
| Outlets (elec, cable, phone) | | | | |
| Windows (paint, operation) | | | | |
| Blinds | | | | |
| | | | | |
| **Living Room / Other Spaces** | | | | |
| Cleanliness | | | | |
| Doors / Locks | | | | |
| Closets (doors, organizers) | | | | |
| Floor | | | | |
| Walls (paint, holes) | | | | |
| Ceiling | | | | |
| Lighting Fixtures | | | | |
| Outlets (elec, cable, phone) | | | | |
| Windows (paint, operation) | | | | |
| Blinds | | | | |
| | | | | |
| **Amenities & Safety** | | | | |
| Water Pressure | | | | |
| Water Temp | | | | |
| Heating System | | | | |
| Air Conditioning | | | | |
| Washer/Dryer (test) | | | | |
| Thermostat | | | | |
| Smoke Detectors | | | | |
| Fire Extinguishers | | | | |

## Document Information

Document Reference Number: 452240

| Document Pages: 19 | Signatures: 21 Initials: 33 | Status: Completed |

| Signature Summary | Signature | Initials | Timestamp | Signing Status |
|---|---|---|---|---|
| Ali Wiliingham | | AW | 08/17/2020 03:02:36 PM CST | Completed |
| Document Started: Email Address: | 08/17/2020 02:56:09 PM CST awillingham@stringtheoryschools.org | | | |
| Antwann Simpson | Antwann Simpson | AS | 08/17/2020 03:14:19 PM CST | Completed |
| Document Started: Email Address: | 08/17/2020 03:13:17 PM CST bilal.simpson@icloud.com | | | |
| Tom Maduzia | Tom Maduzia | TM | 08/18/2020 01:57:57 PM CST | Completed |
| Document Started: Email Address: | 08/18/2020 01:56:17 PM CST tmaduzia@postcre.com | | | |

| Signature Details | Page | Signature/Initials | Signing Status | Tracking Details |
|---|---|---|---|---|
| Ali Wiliingham | 1 | | Completed | IP Address: 73.81.25.11 Timestamp: 08/17/2020 02:56:16 PM CST User Agent: Safari on MacOS |
| Ali Wiliingham | 2 | AW | Completed | IP Address: 73.81.25.11 Timestamp: 08/17/2020 02:58:03 PM CST User Agent: Safari on MacOS |
| Ali Wiliingham | 3 | AW | Completed | IP Address: 73.81.25.11 Timestamp: 08/17/2020 02:58:46 PM CST User Agent: Safari on MacOS |
| Ali Wiliingham | 4 | AW | Completed | IP Address: 73.81.25.11 Timestamp: 08/17/2020 02:59:03 PM CST User Agent: Safari on MacOS |
| Ali Wiliingham | 5 | AW | Completed | IP Address: 73.81.25.11 Timestamp: 08/17/2020 03:00:45 PM CST User Agent: Safari on MacOS |
| Ali Wiliingham | 6 | AW | Completed | IP Address: 73.81.25.11 Timestamp: 08/17/2020 03:00:54 PM CST User Agent: Safari on MacOS |
| Ali Wiliingham | 7 | AW | Completed | IP Address: 73.81.25.11 Timestamp: 08/17/2020 03:01:03 PM CST User Agent: Safari on MacOS |
| Ali Wiliingham | 8 | AW | Completed | IP Address: 73.81.25.11 Timestamp: 08/17/2020 03:01:12 PM CST User Agent: Safari on MacOS |
| Ali Wiliingham | 9 | AW | Completed | IP Address: 73.81.25.11 Timestamp: 08/17/2020 03:01:20 PM CST User Agent: Safari on MacOS |
| Ali Wiliingham | 10 | | Completed | IP Address: 73.81.25.11 Timestamp: 08/17/2020 03:01:23 PM CST User Agent: Safari on MacOS |
| Ali Wiliingham | 12 | | Completed | IP Address: 73.81.25.11 Timestamp: 08/17/2020 03:01:29 PM CST User Agent: Safari on MacOS |
| Ali Wiliingham | 13 | | Completed | IP Address: 73.81.25.11 Timestamp: 08/17/2020 03:01:34 PM CST User Agent: Safari on MacOS |
| Ali Wiliingham | 14 | AW | Completed | IP Address: 73.81.25.11 Timestamp: 08/17/2020 03:01:41 PM CST User Agent: Safari on MacOS |

| | | | | |
|---|---|---|---|---|
| Ali Wiliingham | 14 | AW | Completed | IP Address: 73.81.25.11<br>Timestamp: 08/17/2020 03:01:42 PM CST<br>User Agent: Safari on MacOS |
| Ali Wiliingham | 14 | AW | Completed | IP Address: 73.81.25.11<br>Timestamp: 08/17/2020 03:01:44 PM CST<br>User Agent: Safari on MacOS |
| Ali Wiliingham | 14 | AW | Completed | IP Address: 73.81.25.11<br>Timestamp: 08/17/2020 03:01:44 PM CST<br>User Agent: Safari on MacOS |
| Ali Wiliingham | 15 | | Completed | IP Address: 73.81.25.11<br>Timestamp: 08/17/2020 03:01:46 PM CST<br>User Agent: Safari on MacOS |
| Ali Wiliingham | 16 | | Completed | IP Address: 73.81.25.11<br>Timestamp: 08/17/2020 03:01:51 PM CST<br>User Agent: Safari on MacOS |
| Ali Wiliingham | 17 | | Completed | IP Address: 73.81.25.11<br>Timestamp: 08/17/2020 03:01:54 PM CST<br>User Agent: Safari on MacOS |
| Antwann Simpson | 1 | Antwann Simpson | Completed | IP Address: 73.81.25.11<br>Timestamp: 08/17/2020 03:13:28 PM CST<br>User Agent: Safari on MacOS |
| Antwann Simpson | 2 | AS | Completed | IP Address: 73.81.25.11<br>Timestamp: 08/17/2020 03:13:32 PM CST<br>User Agent: Safari on MacOS |
| Antwann Simpson | 3 | AS | Completed | IP Address: 73.81.25.11<br>Timestamp: 08/17/2020 03:13:34 PM CST<br>User Agent: Safari on MacOS |
| Antwann Simpson | 4 | AS | Completed | IP Address: 73.81.25.11<br>Timestamp: 08/17/2020 03:13:36 PM CST<br>User Agent: Safari on MacOS |
| Antwann Simpson | 5 | AS | Completed | IP Address: 73.81.25.11<br>Timestamp: 08/17/2020 03:13:38 PM CST<br>User Agent: Safari on MacOS |
| Antwann Simpson | 6 | AS | Completed | IP Address: 73.81.25.11<br>Timestamp: 08/17/2020 03:13:39 PM CST<br>User Agent: Safari on MacOS |
| Antwann Simpson | 7 | AS | Completed | IP Address: 73.81.25.11<br>Timestamp: 08/17/2020 03:13:47 PM CST<br>User Agent: Safari on MacOS |
| Antwann Simpson | 8 | AS | Completed | IP Address: 73.81.25.11<br>Timestamp: 08/17/2020 03:13:46 PM CST<br>User Agent: Safari on MacOS |
| Antwann Simpson | 9 | AS | Completed | IP Address: 73.81.25.11<br>Timestamp: 08/17/2020 03:13:46 PM CST<br>User Agent: Safari on MacOS |
| Antwann Simpson | 10 | Antwann Simpson | Completed | IP Address: 73.81.25.11<br>Timestamp: 08/17/2020 03:13:50 PM CST<br>User Agent: Safari on MacOS |
| Antwann Simpson | 12 | Antwann Simpson | Completed | IP Address: 73.81.25.11<br>Timestamp: 08/17/2020 03:13:56 PM CST<br>User Agent: Safari on MacOS |
| Antwann Simpson | 13 | Antwann Simpson | Completed | IP Address: 73.81.25.11<br>Timestamp: 08/17/2020 03:14:00 PM CST<br>User Agent: Safari on MacOS |
| Antwann Simpson | 14 | AS | Completed | IP Address: 73.81.25.11<br>Timestamp: 08/17/2020 03:14:03 PM CST<br>User Agent: Safari on MacOS |
| Antwann Simpson | 14 | AS | Completed | IP Address: 73.81.25.11<br>Timestamp: 08/17/2020 03:14:03 PM CST<br>User Agent: Safari on MacOS |

| Antwann Simpson | 14 | *AS* | Completed | IP Address: 73.81.25.11<br>Timestamp: 08/17/2020 03:14:04 PM CST<br>User Agent: Safari on MacOS |
| Antwann Simpson | 14 | *AS* | Completed | IP Address: 73.81.25.11<br>Timestamp: 08/17/2020 03:14:05 PM CST<br>User Agent: Safari on MacOS |
| Antwann Simpson | 15 | *Antwann Simpson* | Completed | IP Address: 73.81.25.11<br>Timestamp: 08/17/2020 03:14:07 PM CST<br>User Agent: Safari on MacOS |
| Antwann Simpson | 16 | *Antwann Simpson* | Completed | IP Address: 73.81.25.11<br>Timestamp: 08/17/2020 03:14:10 PM CST<br>User Agent: Safari on MacOS |
| Antwann Simpson | 17 | *Antwann Simpson* | Completed | IP Address: 73.81.25.11<br>Timestamp: 08/17/2020 03:14:13 PM CST<br>User Agent: Safari on MacOS |
| Tom Maduzia | 1 | *Tom Maduzia* | Completed | IP Address: 71.123.35.11<br>Timestamp: 08/18/2020 01:57:50 PM CST<br>User Agent: Chrome on MacOS |
| Tom Maduzia | 2 | *TM* | Completed | IP Address: 71.123.35.11<br>Timestamp: 08/18/2020 01:57:49 PM CST<br>User Agent: Chrome on MacOS |
| Tom Maduzia | 3 | *TM* | Completed | IP Address: 71.123.35.11<br>Timestamp: 08/18/2020 01:57:49 PM CST<br>User Agent: Chrome on MacOS |
| Tom Maduzia | 4 | *TM* | Completed | IP Address: 71.123.35.11<br>Timestamp: 08/18/2020 01:57:49 PM CST<br>User Agent: Chrome on MacOS |
| Tom Maduzia | 5 | *TM* | Completed | IP Address: 71.123.35.11<br>Timestamp: 08/18/2020 01:57:49 PM CST<br>User Agent: Chrome on MacOS |
| Tom Maduzia | 6 | *TM* | Completed | IP Address: 71.123.35.11<br>Timestamp: 08/18/2020 01:57:49 PM CST<br>User Agent: Chrome on MacOS |
| Tom Maduzia | 7 | *TM* | Completed | IP Address: 71.123.35.11<br>Timestamp: 08/18/2020 01:57:48 PM CST<br>User Agent: Chrome on MacOS |
| Tom Maduzia | 8 | *TM* | Completed | IP Address: 71.123.35.11<br>Timestamp: 08/18/2020 01:57:48 PM CST<br>User Agent: Chrome on MacOS |
| Tom Maduzia | 9 | *Tom Maduzia* | Completed | IP Address: 71.123.35.11<br>Timestamp: 08/18/2020 01:57:48 PM CST<br>User Agent: Chrome on MacOS |
| Tom Maduzia | 9 | *TM* | Completed | IP Address: 71.123.35.11<br>Timestamp: 08/18/2020 01:57:48 PM CST<br>User Agent: Chrome on MacOS |
| Tom Maduzia | 12 | *Tom Maduzia* | Completed | IP Address: 71.123.35.11<br>Timestamp: 08/18/2020 01:57:19 PM CST<br>User Agent: Chrome on MacOS |
| Tom Maduzia | 13 | *Tom Maduzia* | Completed | IP Address: 71.123.35.11<br>Timestamp: 08/18/2020 01:57:25 PM CST<br>User Agent: Chrome on MacOS |
| Tom Maduzia | 14 | *TM* | Completed | IP Address: 71.123.35.11<br>Timestamp: 08/18/2020 01:57:29 PM CST<br>User Agent: Chrome on MacOS |
| Tom Maduzia | 15 | *Tom Maduzia* | Completed | IP Address: 71.123.35.11<br>Timestamp: 08/18/2020 01:57:32 PM CST<br>User Agent: Chrome on MacOS |
| Tom Maduzia | 16 | *Tom Maduzia* | Completed | IP Address: 71.123.35.11<br>Timestamp: 08/18/2020 01:57:39 PM CST<br>User Agent: Chrome on MacOS |

Tom Maduzia          17          *Tom Maduzia*          Completed          IP Address: 71.123.35.11
Timestamp: 08/18/2020 01:57:45 PM CST
User Agent: Chrome on MacOS

# EXHIBIT "2"

## APARTMENT MOVE-IN CHECKLIST
*(Each Tenant signs, and receives a copy of this page)*

**Apartment Community:**    **Presidential City**
**Apartment No:**           **J0803**

| | |
|---|---|
| Tenant 1 Name:    Tyliah Phillips | Guarantor 1 Name: |
| Tenant 2 Name: | Guarantor 2 Name: |
| Tenant 3 Name: | Guarantor 3 Name: |
| Tenant 4 Name: | Guarantor 4 Name: |
| Tenant 5 Name: | Guarantor 5 Name: |
| Tenant 6 Name: | Guarantor 6 Name: |

Move-In Documents in this Package:  *Initial each item to verify they have been completed and signed:*
**X** Residential Lease
**X** Pet Addendum
**X** Condominium Waiver
**X** Lead-Based Paint Disclosure - N/A
**X** Drug-Free/Crime-Free Housing Addendum
**X** Bed Bug Addendum and Philadelphia Bed Bug Safety Brochure
**X** Apartment Inspection Report (*to be filled out by Tenant and returned within 1 week of move-in*)

Number of keys issued:
| | | | |
|---|---|---|---|
| Building Front Door: | | Keys | 1 Fobs |
| Back Door / Other: | | Keys | |
| Apartment Entry Door: | 1 | Keys | |
| Mailbox: | 1 | Keys | |

ALL TENANTS AND GUARANTORS MUST SIGN:
*I acknowledge that I have received and understand my copy of the Lease and all Addenda listed above. I understand that if I don't return all keys upon moving out, I will be charged $25 for each key and $50 for each key fob.*

| | | | |
|---|---|---|---|
| Tenant 1 | Date Signed | Guarantor 1 | Date Signed |
| Tenant 2 | Date Signed | Guarantor 2 | Date Signed |
| Tenant 3 | Date Signed | Guarantor 3 | Date Signed |
| Tenant 4 | Date Signed | Guarantor 4 | Date Signed |
| Tenant 5 | Date Signed | Guarantor 5 | Date Signed |
| Tenant 6 | Date Signed | Guarantor 6 | Date Signed |
| *Crystal Ayres* | | | |
| Authorized Agent for Landlord | Date Signed | | |

Document digitally signed using RENTCafe eSignature services. Document ID: 591359

## RESIDENTIAL LEASE

**THIS LEASE** dated September 13, 2021, is a legally binding contract made between Tyliah Phillips ("Tenant") and Post Presidential Property Owner, LLC ("Landlord"), and Post Commercial Real Estate LLC ("Agent for Landlord"), to rent J0803 (the "Apartment") at Jefferson Building at Presidential City ("the APARTMENT COMMUNITY") located at the address 3850 City Avenue, a.k.a. 3900 City Avenue, Philadelphia, PA 19131 on the following terms and conditions, for use as a private residence only. The term "Tenant" in this Lease refers to all parties guaranteeing payment.  No other occupants are permitted, except Tenant's named dependents: Zara Davis.  Persons not listed above may not stay in the apartment for more than seven (7) consecutive days and only with the Tenant present.

**1. OFFER TO LEASE**:  Landlord acknowledges receipt of the monies listed below. If Landlord does not sign and accept this Lease within five (5) days of the date above, Tenant's monies shall be refunded, less $60.00 for the credit check/processing fee:

| Rent and Additional Rent | Monthly Recurring Amount |
|---|---|
| Base Rent | $1,745.00 |
| Pet Fee | $0.00 |
| Storage Fee | $0.00 |
| Parking Fee | $65.00 |
| TOTAL: | $1,810.00 |

**2. LEASE TERM**: This Lease starts at 12:00 Noon on 10/11/2021 and ends at 12:00 noon on 10/10/2023.  Resident will pay $1,163.33 for the first month's rent, which is due on or before 10/11/2021.

**3. RENT**:

    **a. All Rent and Additional Rent payments must be received by Landlord on or before the 1st day of each month without demand**, whether the 1st is a weekday, weekend or holiday.  Rent may be paid online at www.RENTCafe.com., or by check made to Post Presidential Property Owner, LLC and either dropped in the labeled box outside the Property Manager's Office at the Apartment Community, or mailed to:

                Post Presidential Property Owner, LLC
                P.O. Box 44131
                Philadelphia PA 19144

    **b.** Tenant will pay to Landlord a prepaid rent in the amount of $0.00, which is due on or before 10/11/2021.

**4. LATE PAYMENTS AND RETURNED CHECKS**: Time is of the essence of this Lease. If Rent payment is not received in full by the 5th day of any month, or if Tenant's check is returned unpaid for insufficient funds, Tenant agrees to pay **ten percent** (10%) of the monthly Rent and an **additional** $50.00 for each returned check. All payments will be applied against utility payments before Rent. All late payments shall be made using cashier's checks, certified check.  If more than one of Tenant's checks is returned unpaid, all future payments shall be made using cashier's checks, certified check. If Tenant submits a rent payment to Landlord using a check which is returned unpaid by Tenant's bank for insufficient funds on two (2) occasions at any time during the Lease, it is a breach of the Lease. Landlord may report any late payment or breach of this Lease to a credit or tenant reporting agency, which may create a negative credit record on Tenant.

*Initials:*  Tenant 1 _____  Tenant 2 _____  Tenant 3 _____  Tenant 4 _____  Tenant 5 _____  Tenant 6 _____

*Agent for Landlord* _____

*PCRE v. 2.1.21*

Document digitally signed using RENTCafe eSignature services. Document ID: 591359

**5. SECURITY DEPOSIT**:  Tenant has paid to Landlord a Security Deposit of $1,000.00, and a Pet Deposit of $0.00. Tenant's Security Deposit will be returned to Tenant within thirty (30) days after the end of the lease term if: (a) all obligations of Tenant have been performed; (b) Apartment is not damaged and is left in its original condition, normal wear and tear excepted; and (c) Tenant has provided a valid forwarding address.  Tenant agrees not to apply the Security Deposit to any rent payment.  Landlord will deposit Security deposit monies in an interest-bearing account as required by law at the <u>Customer's Bank</u> located at 99 Bridge St, Phoenixville, PA 19460. Landlord will notify Tenant if security deposits are moved to another location or to another financial institution. Landlord shall have thirty (30) days after the end of the lease term to give Tenant written notice of Landlord's intent to impose a claim for damages on the deposit with the reason(s) for imposing the claims.

**6. UTILITIES AND ADDITIONAL RENT**: Landlord and Tenant are each responsible for paying for the following utilities and other fees, all of which are Additional Rent:

| Service | Responsibility | Amount |
|---|---|---|
| Electric | **Resident** | **Sub-metered** |
| Cooking Gas | **N/A** | **$0.00** |
| Heat | **Resident** | **Sub-metered** |
| AC | **Resident** | **Sub-metered** |
| Water | **Resident** | **$40.00** |
| Hot Water | **Resident** | **$20.00** |
| Waste | **Landlord** | **$0.00** |
| Refuse | **Landlord** | **$0.00** |
| Recyclables | **Landlord** | **$0.00** |
| Cable | **N/A** | **$0.00** |
| Laundry | **N/A** | **$0.00** |
| Internet | **N/A** | **$0.00** |
| General Utility Fee | **N/A** | **$0.00** |
| Additional Roommate Fee | **N/A** | **$0.00** |
| Furniture Rental | **N/A** | **$0.00** |

Tenant is required to establish electrical service account with utility provider effective on the date of move-in and for duration of tenancy. If Tenant fails to establish the account, Landlord will invoice Tenant for electricity plus a $25.00 fee as Additional Rent for each billing period.

**7. JOINT AND SEVERAL RESPONSIBILITY FOR LEASE OBLIGATIONS**: Each Tenant who signs this Lease is jointly and severally responsible to fulfill all of the obligations of this Lease, including any fees, damages and other costs and to pay the rent in full.  This means that each individual Tenant is responsible for full payment of sums due.

**8. INCORRECT OR FALSE INFORMATION IN APPLICATION**: If Tenant or Guarantor provided false or incorrect information to Landlord in the rental application, it is a breach of this Lease and Landlord may terminate the Lease and/or sue Tenant for possession and any losses or damages.

---

*Initials:*  *Tenant 1*  TP  *Tenant 2* _____ *Tenant 3* _____ *Tenant 4* _____ *Tenant 5* _____ *Tenant 6* _____

*Agent for Landlord*  CA _____

*PCRE v. 2.1.21*

Document digitally signed using RENTCafe eSignature services. Document ID: 591359

**9. USE AND OCCUPANCY**:  The Apartment shall be used for residential purposes only and shall be occupied only by Tenant and named dependents.  No other occupants are permitted.  Guests of Tenant may stay in the Apartment up to seven (7) consecutive days provided that Tenant is present.  No other persons may stay in the Apartment without Landlord's prior written consent.  The Apartment or Apartment Community shall not be used in violation of any applicable laws or ordinances or so as to interfere with the quiet enjoyment, health or safety of other residents of the Apartment Community.

**10. PETS**: Tenant may have domestic animals as pets, provided that an executed Pet Addendum is attached to this Lease.  No other animals of any kind shall be permitted in the Apartment without the written consent of Landlord. All dogs must pass the AKC Good Canine Citizen training program as evidenced by a certificate prior to move-in.

**11. LOCK-OUT**:  Landlord will charge $75 per occurrence as Additional Rent to admit Tenant to the Apartment after normal business hours.  Tenant must provide appropriate identification.  **Under no circumstances will Landlord admit any non-tenant to the apartment for any reason**.

**12. TENANT'S INSURANCE**: Tenant shall obtain a valid Renter's Policy of Insurance to  cover Tenant's personal liability for claims by Tenant's visitors, licensees and others for accidents within and damage to the Apartment and the Apartment Community caused by Tenant.  **Tenant shall provide evidence of liability insurance to Landlord prior to move-in and shall maintain liability coverage through-out the term of the Lease.  Failure to do so shall constitute a breach of this Lease**.

Tenant's Renter's Policy must include comprehensive general liability insurance for bodily injury and property damage with a combined single limit of at least $300,000.  If Landlord's insurance is found to apply to any loss or damage covered by Tenant's insurance, then: (a) Landlord's insurance and Landlord's obligation to pay shall be considered excess coverage; (b) Tenant's insurance must be fully used up before any claim can be made against Landlord or Landlord's insurance.

Tenant may obtain liability insurance through the **Resident Shield program available from Rent Café** or through an outside insurance company of Tenant's choice.  If Tenant uses an outside insurer, Tenant shall list the Landlord as an Interested Party for immediate notice of cancellation, non-renewal or material change in Tenant's policy as follows:

> Post Presidential Property Owner, LLC
> P.O. Box 3687
> Coppell TX 75019

**If Tenant's liability insurance lapses or is cancelled for any reason, Tenant will be automatically enrolled in Landlord's Master Policy Program and billed $25 per month as Additional Rent.**

**Tenant acknowledges that Landlord's insurance does not cover personal property of Tenant, Tenant's guests, licensees or invitees, whether such loss is caused by fire, theft, rain, war, acts of God, acts of others and any other causes, nor shall Landlord be held liable for such losses.  Insurance coverage for Tenant's personal property is at Tenant's sole option.**

**Tenant and Landlord agree that subrogation is allowed by all parties and that this Lease supersedes any language to the contrary in the Lease.  This means that Landlord's insurance carrier may sue Tenant for any losses it pays as a result of Tenant's negligence, and Tenant's insurance carrier may sue Landlord for losses it pays as a result of Landlord's negligence.**

*Initials:   Tenant 1 _____   Tenant 2 _____   Tenant 3 _____   Tenant 4 _____   Tenant 5 _____   Tenant 6 _____*

*Agent for Landlord _____*

*PCRE v. 2.1.21*

Document digitally signed using RENTCafe eSignature services. Document ID: 591359

**13. MOVE-IN AND MOVE-OUT:**  Tenant may move-in to the Apartment on the first date of this Lease and must coordinate building access and use of the elevator with Landlord.  On or before the last date of the Lease, Tenant shall vacate the Apartment, return all keys and key fobs to Landlord, and remove all possessions and any trash.  Tenant shall be charged $25 for each key and $50 for each key fob that is not returned in working order. Tenant is responsible to cancel any utilities in Tenant's name on or before move-out.

**14. SUBLETTING PROHIBITED**: Tenant may not sublet the Apartment, charge anyone not named in the Lease any fee to use the Apartment or assign this Lease to another person without Landlord's express written permission which may be granted at Landlord's sole discretion.  "Sublet" shall include any use by others not named in this Lease.  Any subletting by Tenant without Landlord's permission is a violation of the Lease. Any proposed Sub-Tenant shall be required to complete a rental application and meet all of Landlord's rental standards.  Tenant shall remain responsible for all Lease obligations and liabilities, shall be required to pay a $250 subletting fee to cover Landlord's handling expenses and shall forfeit his or her Security Deposit in full.  Landlord's decision to allow or deny subletting on one occasion has no bearing on Landlord's future subletting decisions.

**15. RENEWAL AND TERMINATION**:  Tenant or Landlord may terminate this Lease at the end of the Lease Term by giving the other party a minimum of sixty (60) days' written notice prior to the end of the Term. Landlord may increase the monthly Base Rent and/or Additional Rent (the "Monthly Rent") for the new Lease Term by giving Tenant written notice of the new Monthly Rent at least seventy-five (75) days prior to the end of the current Term.  If Tenant fails to give notice of termination in writing per Section 24 within fifteen (15) days' of receipt of rent increase notice and at least sixty (60) days prior to the end of the current Lease Term, the Lease will automatically renew for an additional twelve (12) month Lease Term at the new Monthly Rent.  No month-to-month Lease Term option is available, with the exception of Armed Forces personnel per Section 17.

**16. EARLY TERMINATION**: Tenant may terminate this Lease prior to the end of the Lease Term and be relieved of further liability for rent for the unexpired term by (a) giving Landlord at least sixty (60) days prior written notice; and (b) paying all monies due through the date of termination; and (c) paying two months' rent as liquidated damages; and (d) forfeiting security deposit and last month's rent. **Any move-in concession given by Landlord must be reimbursed at early termination**. Tenant's election for early termination shall not relieve Tenant's obligations and liability for damage to the Apartment or Apartment Community.

**17. ARMED FORCES EXCEPTION:** Any member of the United States Armed Forces who is required to move pursuant to a permanent change of station orders to depart 35 miles or more from the location of the rental premises or who is prematurely or involuntarily discharged or released from active duty with the United States Armed Forces may terminate the Lease by providing Landlord with a written notice of termination effective not less than thirty (30) days after the Landlord's receipt of the notice.  The notice must be accompanied by (a) a copy of the official military orders; or (b) a written verification signed by the member's commanding officer.

In the event a member of the United States Armed Forces dies during active duty, an adult member of his immediate family may terminate his Lease by providing Landlord with a written notice of termination effective at least thirty (30) days after the Landlord's receipt of the notice.  The notice to Landlord must include (a) a copy of the official military orders; or (b) a written verification signed by the member's Commanding Officer.  Upon termination of a Lease by a member of the United States Armed Forces under this section, the Tenant is liable for the rent due prorated to the effective date of the termination payable at such time as would have otherwise been required by the terms of the Lease.

*Initials:  Tenant 1* __TP__ *Tenant 2* _____ *Tenant 3* _____ *Tenant 4* _____ *Tenant 5* _____ *Tenant 6* _____

*Agent for Landlord* __CA__

*PCRE v. 2.1.21*

Document digitally signed using RENTCafe eSignature services. Document ID: 591359

**18. LANDLORD'S RIGHT OF ACCESS**: Landlord may enter Tenant's Apartment during reasonable hours with 24 hours prior notice to Tenant for inspection, repairs, display to prospective tenants, maintenance and improvements. In case of emergency, Landlord may enter without prior notice.  Landlord may, but shall not be required to, enter at any time to protect life and to prevent damage to property.

**19. APARTMENT COMMUNITY RULES AND REGULATIONS**: Tenant, Tenant's guests, licensees and invitees shall comply with all governmental laws and regulations and with the Apartment Community Rules and Regulations which are attached to and made a part of this Lease.  Landlord may change the Rules and Regulations during the term of this Lease.  Violation of the Rules and Regulations is a breach of this Lease.

**20.  TENANT'S CARE OF PROPERTY; MOLD AWARENESS; SMOKING POLICY:**  Tenant has inspected and accepts the Apartment in "as is" condition. Tenant agrees to keep and, at the end of the term, return the Apartment, appliances, fixtures and any furniture rented from Landlord in a clean and sanitary condition and in good repair**.**

**Tenant agrees to:**
- Keep the Apartment clean and safe;
- Dispose of all trash, garbage and any other waste materials as required by the Landlord and the law;
- Use reasonable care when utilizing any of the electrical, plumbing, heating, air conditioning, ventilation, elevators or other facilities or appliances at the Apartment and Apartment Community;
- Keep the Apartment well ventilated and temperature and humidity controlled with heat/air conditioning as appropriate to the season; maintain indoor temp minimum 60 degrees in winter to prevent pipes from freezing; keep AC on when outdoor humidity is greater than 60% to prevent mold;
- Close all windows if planning an absence of 24 hours or more

**Tenant agrees NOT to:**
- Use the Apartment for gatherings of excessive numbers of people;
- Keep any flammable, hazardous or explosive materials at the Apartment or Apartment Community;
- Destroy, damage or deface any part of the Apartment or Apartment Community;
- Alter the Apartment in any way, including apply paint or wallpaper, install permanent shelving, redecorate or make any structural changes whatsoever to the Apartment nor remove any fixtures, appliances or Landlord-owned furniture; or
- Perform or cause others to perform any repairs or alterations.

**MOLD AWARENESS:**  Mold is found virtually everywhere in our environment. When excess moisture is present inside a dwelling, mold can grow and may adversely affect building surfaces, personal belongings and air quality. **Preventing mold begins with you**. Tenant is hereby notified that the Premises are subject to the occurrence of mold or mildew if not properly maintained.  Tenant agrees to maintain the Premises in a manner that prevents the occurrence of mold or mildew in the Premises.  Tenant acknowledges that routine visual inspections for mold growth or signs of water damage and wetness is the most reliable method for identifying mold or mildew and preventing its spread.  The presence of mold or mildew on any surface should be addressed immediately.  **Most mold can be removed by using water, detergent and bleach and drying the surface completely afterwards**.

**Tenant agrees to comply with the following**:

    a) Tenant shall immediately report to Landlord if any mold growth occurs.
    b) Tenant shall immediately report any water intrusion, such as leaky faucets, wet wall surfaces, drips at windows, washing machines, HVAC units or water from above.

*Initials:*  *Tenant 1* ___TP___  *Tenant 2* _____  *Tenant 3* _____  *Tenant 4* _____  *Tenant 5* _____  *Tenant 6* _____

*Agent for Landlord* ___CA___

*PCRE v. 2.1.21*

Document digitally signed using RENTCafe eSignature services. Document ID: 591359

c) Tenant shall limit indoor humidity by maintaining air conditioning during humid weather and leaving bathroom door open after showering.
d) Tenant shall use all reasonable care to close windows to prevent rain or outdoor water from infiltrating.
e) Tenant agrees not to bring any personal property into the unit that may contain mold, especially "soft possessions" such as sofas, mattresses, and pillows.

**SMOKING POLICY:**  Tenant acknowledges and understands that the City of Philadelphia has enacted the Clean Indoor Air Worker Protection Law which limits the areas where smoking is legally permitted to prevent the health dangers inherent in environmental tobacco smoke and second-hand smoke.  In accordance with the law, smoking is strictly prohibited in all common areas of the building including corridors, elevators and common rooms.  Landlord permits smoking within Tenant's Apartment only.  Smoking is prohibited outdoors within 50 feet of any building.  Tenant further acknowledges and understands that causing the infiltration of second-hand smoke into the common areas of the building and/or into other Apartments in the building, may constitute a nuisance and health hazard and be a material infringement on the quiet enjoyment of the other Tenants in the building.  For the foregoing reasons, Tenant acknowledges and agrees that the prevention by Tenant, its invitees and guests, of the infiltration of second-hand smoke into the common areas of the building and/or into other Apartments in the building is of the essence to this Lease, and Tenant covenants and agrees to take all measures necessary to minimize second-hand smoke from emanating from Tenant's Apartment and infiltrating the common areas of the building and/or into other Apartments in the building.

**21. MAINTENANCE AND REPAIRS**:  Tenant agrees to notify Landlord promptly in writing of any repairs needed and of any potentially harmful health or environmental conditions at the premises. Landlord will make repairs required by law to the Apartment with reasonable promptness after receipt of written notice. If any damage beyond normal wear and tear is caused by Tenant, Tenant's guests, licensees, invitees or pets, Tenant agrees to pay Landlord the full cost of repair within five (5) days of demand.

**22. PROPERTY CONTACT INFORMATION**:

Rental Payments:
Name:    Nicole Messina                          Email:      nmessina@postcre.com
Phone:                                            Website:    www.rentcafe.com

Maintenance Requests:
Phone:    (215) 586-4115                          Website:    www.rentcafe.com

Emergency Maintenance Contact:
Phone:    (215) 586 -4416                         Website:    www.rentcafe.com

**23. INJURIES AND DAMAGE; INDEMNIFICATION AND HOLD HARMLESS**: Tenant agrees to release Landlord, its agents, employees, shareholders, directors, officers, and other representatives, and hereby waive any claims against the Owner(s) of the real property described in the Lease, their agents, employees, shareholders, directors, officers, partners and other representatives ("the Landlord Representatives"), from any and all liability for claims or causes of action arising from damages or injury to any person or property in or about the Apartment and the Apartment Community, including but not limited to attorney's fees, no matter how occasioned or caused, or for injury to any person or property, including those caused by, in whole or in part, the negligent acts or omissions of the Landlord Parties, the Landlord's contractors or subcontractors, anyone directly or indirectly employed by Landlord or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by the Landlord Representative. Tenant further agrees to indemnify, defend and hold harmless the Landlord Representatives from any and all actions of Tenant, their servants, agents, guests, invitees or licensees.

---

*Initials:*  Tenant 1 __TP__   Tenant 2 _____   Tenant 3 _____   Tenant 4 _____   Tenant 5 _____   Tenant 6 _____

*Agent for Landlord*  __CA__

*PCRE v. 2.1.21*

Document digitally signed using RENTCafe eSignature services. Document ID: 591359

Without limiting the foregoing, Tenant agrees that the Landlord Representatives shall not be liable for any injuries or damage to persons or property wholly or partially caused by any of the following: (a) entrustment of any property to Landlord or its employees or agents; (b) theft, burglary, assault, vandalism or other crimes caused by other Tenants or persons; (c) steam, gas, electricity, falling plaster, leakage of waste from pipes, rain, snow, malfunctions of appliances, leakage or dampness of any nature whatsoever, regardless of source; (d) actions taken or omissions of other Tenants; (e) interference with light, view, or other incorporeal hereditaments; (f) operations and construction of any public or quasi-public work; (g) any patent or latent defect in the building; (h) use by Tenant, Tenant's licensees, invitees or guests of any community room, storeroom, laundry room, clubhouse, parking lot, parking garage, swimming pool or any other auxiliary facility furnished by Landlord for Tenant's use.

Tenant agrees to indemnify the Landlord Representatives against all losses incurred by Landlord as a result of: (a) Tenant's failure to comply with this Lease; (b) any damage or injury happening in or about the Apartment or Apartment Community to Tenant, Occupants named in the Lease, Tenant's licensees, invitees or guests, or such persons' property; (c) damage or loss in or about the Apartment or Apartment Community caused by Tenant, Tenant's licensees, invitees or guests; (d) Tenant's failure to comply with any requirements imposed by any governmental authority; or (e) any judgment, lien or other encumbrance filed against the Apartment or the Apartment Community as a result of Tenant's action.

**24.  NOTICES**: All notices made under this Lease from Landlord to Tenant or from Tenant to Landlord shall be made in writing and shall be either delivered personally to the Tenant's apartment or to the Landlord's management office on the premises, or sent by 1st class mail to the addresses provided for rental payments on page 1 of the Lease. Landlord shall notify Guarantor of any breach of this Lease by Tenant during the first year of this Lease only.

**25.  NOTICE OF EXTENDED ABSENCE:** Tenant shall notify Landlord of any extended absence of more than seven (7) days from the Apartment on or before the first day of Tenant's absence.  Failure to notify Landlord shall be considered abandonment of the property and grounds for Lease termination.

**26. ABANDONMENT OF APARTMENT AND PERSONAL PROPERTY**: Tenant shall not abandon the Apartment. Tenant must notify Landlord in writing within ten (10) days of lease termination or abandonment of Tenant's intent to collect any personal property remaining in the Apartment or storage areas.  Landlord will retain Tenant's property for up to thirty (30) days at location of Landlord's choice.  If Tenant fails to notify Landlord within ten (10) days of termination, or fails to collect the property within thirty (30) days, Tenant's property shall be considered abandoned and Landlord may dispose of property without further notice.  Tenant must pay Landlord's cost of moving, storage and disposal of Tenant's personal property.  Landlord shall not be liable for any injury or damage arising out of or resulting from any reasonable disposal of such property.

**27. DESTRUCTION AND EMINENT DOMAIN**: If Tenant, Tenant's guests, licensees or invitees cause damage by fire or any other means, the Lease will remain in effect and Tenant will remain obligated to pay rent, even if the property is uninhabitable.  If the Apartment is made uninhabitable for more than thirty (30) days by fire or any other means not the fault of the Tenant, then Tenant may terminate this Lease with written notice to Landlord.  If the Apartment Community is taken by or conveyed to a Governmental Authority in whole or part by eminent domain, which is the government's right to take property for public use, or is destroyed by any extraordinary natural or man-made cause that is reasonably beyond the Landlord's control, in whole or in part, the Lease will terminate. Tenant releases to Landlord all rights to any compensation paid by a Governmental Authority.

Initials:   *Tenant 1*  ⊤ P   *Tenant 2* _____   *Tenant 3* _____   *Tenant 4* _____   *Tenant 5* _____   *Tenant 6* _____

*Agent for Landlord*   CA

Document digitally signed using RENTCafe eSignature services. Document ID: 591359

**28. SECURITY**: **Tenant hereby agrees and acknowledges that Landlord and Landlord's agent shall not provide and shall have no duty to provide any security services to Tenant, Tenant's guests, licensees or invitees or to the apartment community. Tenant shall look solely to the public police force for security protection.** Tenant agrees and acknowledges that protection against criminal action is not within the power of Landlord and Landlord's Agent, and, even if from time to time Landlord provides security services those services cannot be relied upon by Tenant and shall not constitute a waiver of, or in any manner modify, the Lease. Landlord and Landlord's Agent shall not be liable for failure to provide adequate security services or for criminal or wrongful actions by others against Tenant, Tenant's guests, licensees, or invitees.

**29. ENTIRE AGREEMENT**: This Lease constitutes the entire agreement between the Landlord and Tenant.  No other representations, inducements, promises or agreements, oral or otherwise, shall have any force or effect.  Any modifications to this Lease must be in writing and signed by Landlord and Tenant in order to be valid.

**Notice to Tenant: this Lease contains waivers of consumer rights.  Tenant acknowledges that he waives certain rights by signing this Lease.**  Tenant agrees to waive any notice including the ten (10) or thirty (30) day notice period which is contained in Section 501 of the Landlord and Tenant Act of 1951, as amended, 68 P.S. 250.501, or any other notice period established by law.

**30.  VIOLATIONS OF LEASE**:  Tenant violates the Lease if he fails to fulfill all of the obligations agreed to in the Lease.

Violations include those described in this Lease, which include but are not limited to:

- Failure to pay Rent and Additional Rent when due;
- Submitting two (2) Rent checks which are returned unpaid for insufficient funds;
- Failure to leave the Apartment at the end of the Lease Term;
- Abandoning the Apartment prior to the end of the Lease Term without Landlord permission;
- Failure to follow the Apartment Community Rules and Regulations;
- Damaging or failing to care for the property as agreed in this Lease;
- Failure to obtain and keep a Renter's Insurance policy in place throughout the Lease;
- Violating the sub-letting provision or using the Apartment for non-residential purposes;
- Failing to obey the Drug-Free/Crime-Free Housing Addendum requirements.

If Tenant breaches or violates this Lease, Landlord may terminate the Lease, and/or Tenant may lose part or all of the Security Deposit, and/or Landlord may sue to evict the Tenant, and/or Landlord may sue the Tenant for damages.  Landlord may also sue Tenant for recovery of expenses.  If Tenant violates the Lease, each Tenant agrees to waive notice to quit. This means that Landlord may file a complaint in court asking for an order evicting each Tenant from the Apartment without giving each Tenant prior notice to quit.  Landlord may only evict Tenant through court action.  Failure of Landlord to insist upon strict compliance with the terms of this Lease shall not constitute a waiver of Landlord's right to act on any violation of the Lease.

*Initials:   Tenant 1 ___TP___   Tenant 2 _____   Tenant 3 _____   Tenant 4 _____   Tenant 5 _____   Tenant 6 _____*

*Agent for Landlord ___CA___*

*PCRE v. 2.1.21*

**31. REMEDIES**:
**Landlord may file suit against Tenant to enforce the terms of the lease without notice to Tenant.** All remedies under this Lease at law or in equity shall be cumulative. If Landlord institutes legal action to enforce this Lease, Tenant shall pay reasonable attorney's fees in addition to court and other costs to Landlord. Any move-in concession given must be reimbursed at that time due to breach in Lease. In any action brought by Tenant against Landlord in which Landlord prevails, Tenant shall pay all of Landlord's legal fees and related expenses. Landlord and Tenant waive the right to a jury trial for any claim or matter concerning this Lease or the Apartment.

**32. LANDLORD'S RIGHT TO MORTGAGE THE LEASED PREMISES (SUBORDINATION):** This Lease does not have any effect upon the rights of Landlord's mortgage company. Tenant's rights shall at all times be junior and subordinate to any deed to secure debt or other instrument which is now or is later placed on the premises of which the Apartment is part to secure a debt; and if requested, Tenant shall execute promptly any certificate that Landlord may request to specifically implement the subordination provided for in this paragraph.

**33. ADDENDA**: The following Addenda are attached to and made a part of this Lease:
- Drug-Free/Crime-Free Housing Addendum
- Apartment Community Rules and Regulations
- Lead-Based Paint Disclosure
- Condominium Waiver
- Bed Bug Addendum and Philadelphia Bed Bug Safety Brochure
- Pet Addendum
- Guarantor Addendum (if applicable)

**34. NOTICE - STATUTORY NOTIFICATION / RADON**: In accordance with state law, Landlord is required to notify you of the existence of radon gas in Pennsylvania. This notice in no way obligates the Landlord or Landlord's Agent, beyond the requirement of notice. Radon gas is a naturally occurring radioactive gas that is odorless, tasteless and colorless. When radon gas has accumulated in a building in sufficient quantities, it may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Pennsylvania. Additional information regarding radon and radon testing may be obtained from your county public health unit.

**35. TITLES AND SEVERABILITY**: All section titles in this Lease are for convenience only. If any provision of this Lease is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only, without invalidating or otherwise affecting the remainder of this Lease.

**36. SPECIAL STIPULATIONS**, if any:

**LEASE EXECUTION DATE**: September 13, 2021

LANDLORD'S AGENT:    POST COMMERCIAL REAL ESTATE
P.O. Box 44131
Philadelphia, PA 19144

BY: *Crystal Ayres* _____
Authorized Agent for Landlord        Date

---

*Initials:*  Tenant 1 *TP*  Tenant 2 _____  Tenant 3 _____  Tenant 4 _____  Tenant 5 _____  Tenant 6 _____

*Agent for Landlord* *CA*

*PCRE v. 2.1.21*

Document digitally signed using RENTCafe eSignature services. Document ID: 591359

**By signing this Lease, each Tenant agrees he has read and understood all of the agreements contained in the Lease.**

ALL TENANTS MUST SIGN [JOINT AND SEVERAL]:

| | |
|---|---|
| Tenant 1 | Date Signed |

| | |
|---|---|
| Tenant 2 | Date Signed |

| | |
|---|---|
| Tenant 3 | Date Signed |

| | |
|---|---|
| Tenant 4 | Date Signed |

| | |
|---|---|
| Tenant 5 | Date Signed |

| | |
|---|---|
| Tenant 6 | Date Signed |

**By signing this Lease, each Guarantor agrees he has read and understood all of the agreements contained in the Lease.**

Guarantor agrees to be jointly and severally liable with Tenant to fulfill Tenant's obligations arising under this Lease, including but not limited to unpaid Rent and Additional Rent as defined in the Lease, property damage, and cleaning and repair costs that exceed Tenant's security deposit.

| | |
|---|---|
| Guarantor 1 | Date Signed |

| | |
|---|---|
| Guarantor 2 | Date Signed |

| | |
|---|---|
| Guarantor 3 | Date Signed |

| | |
|---|---|
| Guarantor 4 | Date Signed |

| | |
|---|---|
| Guarantor 5 | Date Signed |

| | |
|---|---|
| Guarantor 6 | Date Signed |

*PCRE v. 2.1.21*

Document digitally signed using RENTCafe eSignature services. Document ID: 591359

## PET ADDENDUM TO LEASE

This Addendum is made part of the Lease dated September 13, 2021 between Tyliah Phillips ("Tenant") and Post Presidential Property Owner, LLC ("Landlord"), and Post Commercial Real Estate LLC ("Agent for Landlord"), to rent J0803 (the "Apartment") at Jefferson Building at Presidential City ("the APARTMENT COMMUNITY") located at the address 3850 City Avenue, a.k.a. 3900 City Avenue, Philadelphia, PA 19131.

1. Landlord hereby grants Tenant permission to keep, in Tenant's Apartment only, the following pets:

| Pet #1 is a: | Pet #2 is a: | Pet #3 is a: | Pet #4 is a: |
|---|---|---|---|
| Name: | Name: | Name: | Name: |
| Breed: | Breed: | Breed: | Breed: |
| Weight: | Weight: | Weight: | Weight: |
| Color: | Color: | Color: | Color: |

2. No other animals or pets may be kept in the Apartment for any period without Landlord's written permission.

3. Tenant warrants that all pets have been fully licensed and inoculated as required by state and local law. Tenant agrees to provide evidence of licensing and inoculation at Lease signing and to keep all licensing and inoculation current throughout the Lease Term.

4. All dogs must pass the AKC Canine Good Citizen program as evidence by a completion certificate prior to move-in.

5. Pets shall be kept under control by Tenant at all times at the Apartment Community. Dogs must be kept leashed at all times whenever outside the Apartment. Pet shall be exercised only in designated exercise areas. Tenant shall not leave pets on a patio or balcony while away from the Apartment.

6. Tenant shall promptly collect and remove all pet waste and dispose of in designated containers at the Apartment Community. Landlord will impose a fine of $150 per incident for failure to collect and dispose of pet waste.

7. Tenant has paid Landlord $0.00 per pet securing Tenant's performance under this Pet Addendum. All of this deposit is refundable. However, Landlord will deduct all costs and expenses incurred by Landlord to repair damage or perform extra cleaning necessitated by Tenant's pet.

8. Resident agrees to the undersigned that by signing this Addendum, Resident shall pay a Monthly Pet Rent, herein after known as "Additional Rent" in the amount of $0.00 per month on the same date on which the Apartment Rent is due.

9. Tenant shall insure that pets do not disturb residents of the Apartment Community or damage property. If, in Landlord's sole opinion and discretion, the pets disturb residents or causes property damage, Landlord may rescind permission to keep pets in the Apartment and require that Tenant permanently remove pets within ten (10) days after written request. Tenant's payment for damage caused by pets shall not entitle the Tenant to keep pets on the premises. Tenant's failure to permanently remove the pets or to comply with all other terms of this Pet Addendum shall constitute a breach of the Lease.

10. Tenant shall provide adequate food, water, care and supervision for pets at all times. If Landlord discovers any of Tenant's pets appear to be abandoned, neglected, abused, unattended, unsupervised, causing property damage or in need of emergency or veterinary treatment, Tenant grants Landlord the right to take such steps as Landlord in its discretion deems necessary to protect the pet, protect other persons, and prevent damage to property, including but not limited to, entry into the Apartment, removal of the pet from the Apartment Community and delivery to the county animal control department, The Humane Society, a veterinarian, or a temporary or permanent foster home.

11. Except for the pets described above, Tenant shall not keep any pets in the Apartment or within the Apartment Community without Landlord's express permission and prior execution of an additional Pet Addendum.

12. Tenant's failure to comply with the terms of this Pet Addendum or violation of any representation or assurance contained in this Pet Addendum shall constitute a breach of the Lease and/or a **$500** non-refundable penalty.

In case of conflict between the provisions of this Addendum with any provisions of the Lease, this Addendum shall govern.

ALL TENANTS SIGN – SELECT ONE:

[ ]    *I have pets, and have read the policy, and I accept the terms.*

**[x]**    *I do not have a pet. I understand that Landlord must give prior consent to keep any pets in the Apartment for any period.*

Document digitally signed using RENTCafe eSignature services. Document ID: 591359

| | | | |
|---|---|---|---|
| Tenant 1 | Date Signed | Guarantor 1 | Date Signed |
| Tenant 2 | Date Signed | Guarantor 1 | Date Signed |
| Tenant 3 | Date Signed | Guarantor 1 | Date Signed |
| Tenant 4 | Date Signed | Guarantor 1 | Date Signed |
| Tenant 5 | Date Signed | Guarantor 1 | Date Signed |
| Tenant 6 | Date Signed | Guarantor 1 | Date Signed |
| Authorized Agent for Landlord | Date Signed | | |

*Crystal Ayres*

## CONDOMINIUM WAIVER

This Addendum is made part of the Lease dated September 13, 2021 between Tyliah Phillips ("Tenant") and Post Presidential Property Owner, LLC ("Landlord"), and Post Commercial Real Estate LLC ("Agent for Landlord"), to rent J0803 (the "Apartment") at Jefferson Building at Presidential City ("the APARTMENT COMMUNITY") located at the address 3850 City Avenue, a.k.a. 3900 City Avenue, Philadelphia, PA 19131.

If the Landlord elects to convert all or part of the existing Apartment Community into a condominium development, Tenant waives any and all rights to purchase a unit in the Apartment Community, including but not limited to the Apartment identified in this Lease.

This waiver is given by Tenant in consideration of:

1. An extension of the terms of the undersigned's tenancy and right of occupancy beyond the time period required by PA ST 69 Pa. C.S.A. sec. 3410 (b);
2. The undersigned entering into a Lease to purchase a unit in the said premises, when and if the Landlord converts the existing Apartment Community into a condominium development, or;
3. If Landlord converts the existing Apartment Community into a condominium development, Tenant agrees to make alternative living arrangements.

Tenant agrees he has not been influenced by any extent whatever in making this waiver by any representations or statements regarding the condition of the property or any other matters or representations made by Landlord, its assigns and/or nominees. This waiver contains the entire agreement between the parties, and the terms of this waiver are contractual and not mere recital. This Lease is assignable to a new Landlord in the event of a sale of the Apartment Community or a portion thereof.

Tenant agrees he has carefully read this waiver, understand its contents and has signed this waiver voluntarily as his own act with full knowledge of its significance, intending to be legally bound thereby.

**I acknowledge receipt of a copy of this Waiver:**

| | | | |
|---|---|---|---|
| Tenant 1 | Date Signed | Guarantor 1 | Date Signed |
| Tenant 2 | Date Signed | Guarantor 1 | Date Signed |
| Tenant 3 | Date Signed | Guarantor 1 | Date Signed |
| Tenant 4 | Date Signed | Guarantor 1 | Date Signed |
| Tenant 5 | Date Signed | Guarantor 1 | Date Signed |
| Tenant 6 | Date Signed | Guarantor 1 | Date Signed |
| Authorized Agent for Landlord | Date Signed | | |

*Crystal Ayres*

Document digitally signed using RENTCafe eSignature services. Document ID: 591359

## LEAD-BASED PAINT DISCLOSURE ADDENDUM TO LEASE

This Addendum is made part of the Lease dated September 13, 2021 between Tyliah Phillips ("Tenant") and Post Presidential Property Owner, LLC ("Landlord"), and Post Commercial Real Estate LLC ("Agent for Landlord"), to rent J0803 (the "Apartment") at Jefferson Building at Presidential City ("the APARTMENT COMMUNITY") located at the address 3850 City Avenue, a.k.a. 3900 City Avenue, Philadelphia, PA 19131.

### I.    LEAD WARNING STATEMENT

Tenant is hereby notified that housing built before 1978 may contain lead-based paint.  **This Apartment Community was built BEFORE 1978**.  Lead from paint, paint chips and dust can pose health hazards to pregnant women and to young children, who may develop lead poisoning including permanent neurological damage, learning disabilities, reduced intelligence quotient, behavioral problems and impaired memory.  The Residential Lead-Based Hazard Reduction Act requires that any Landlord of a property built before 1978 must give each Tenant a copy of the EPA pamphlet titled "Protect Your Family from Lead in Your Home" which discusses lead poisoning prevention.

### II.    LANDLORD'S DISCLOSURE

Landlords must tell Tenants known information about lead-based paint hazards on the property, where lead-based paint hazards are, and how Landlord knows this information.  Check one:

**A.  Landlord does not know of any lead-based paint or lead-based hazards on the property, unless stated below:**

__ **THIS APARTMENT COMMUNITY WAS BUILT AFTER 1978.  Lead-based paint was outlawed in 1978.**

B.  **Landlord has no reports or records about lead-based paint or lead-based paint hazards on the property:**

_X_  This property was built before 1978. Without a comprehensive lead inspection, conducted by a certified lead inspector, showing there is no lead paint or lead-based hazards, Tenant should assume that this property contains lead-based paint.

### III.    TENANT OPTION TO TEST FOR LEAD

Tenant has the option to have a lead inspection or lead risk assessment made at Tenant's expense.

If Tenant chooses to have a lead inspection or risk assessment, it must be done within ten (10) days of receiving this information or within one (1) week of signing the Lease.  If the lead inspection or lead assessment finds lead-based paint or lead-based paint hazards present, Tenant can terminate the Lease within two (2) business days after receiving the report. All money paid to the Landlord will be returned to the Tenant.

### VI.    TENANT ACKNOWLEDGMENT (Initial)

(A)    Tenant has received the information listed by the landlord in Section II.
(B)    Tenant has received and read the above LEAD WARNING STATEMENT.
(C)    Tenant has received the pamphlet "Protect Your Family from Lead in Your Home."
(D)    Tenant has been given the option to conduct a lead inspection

*PCRE v. 2.1.21*

or lead risk assessment.

<u>ALL TENANTS MUST SIGN:</u>

| | | |
|---|---|---|
| _____ | | _____ |
| Tenant 1          Date Signed | | Guarantor 1          Date Signed |
| _____ | | _____ |
| Tenant 2          Date Signed | | Guarantor 1          Date Signed |
| _____ | | _____ |
| Tenant 3          Date Signed | | Guarantor 1          Date Signed |
| _____ | | _____ |
| Tenant 4          Date Signed | | Guarantor 1          Date Signed |
| _____ | | _____ |
| Tenant 5          Date Signed | | Guarantor 1          Date Signed |
| _____ | | _____ |
| Tenant 6          Date Signed | | Guarantor 1          Date Signed |
| *Crystal Ayres* | | |
| _____ | | |
| Authorized Agent for Landlord     Date Signed | | |

Document digitally signed using RENTCafe eSignature services. Document ID: 591359

## DRUG-FREE/CRIME-FREE HOUSING ADDENDUM TO LEASE

This Addendum is made part of the Lease dated September 13, 2021 between Tyliah Phillips ("Tenant") and Post Presidential Property Owner, LLC ("Landlord"), and Post Commercial Real Estate LLC ("Agent for Landlord"), to rent J0803 (the "Apartment") at Jefferson Building at Presidential City ("the APARTMENT COMMUNITY") located at the address 3850 City Avenue, a.k.a. 3900 City Avenue, Philadelphia, PA 19131.

In consideration of the execution of a Lease for the Apartment identified in the Lease, Landlord and Tenant agree:

1. Tenant, Tenant's guests, licensees, invitees or other persons related to or affiliated with Tenant shall not engage in any criminal activity, including domestic abuse and drug-related criminal activity, on or near Apartment Community premises. "Drug-related criminal activity" means the illegal manufacture, sale, distribution use or possession with intent to manufacture, sell or distribute, or use, of a controlled substance (per §102 of the Controlled Substances Act (21 U.S.C. 802)).

2. Tenant, Tenant's guests, licensees, invitees or other persons related to or affiliated with the Tenant shall not engage in acts of violence or threats of violence, including but not limited to domestic abuse and the unlawful discharge of fire-arms, on or near the Apartment and Apartment Community premises.

3. Tenant, Tenant's guests, licensees, invitees or other persons related to or affiliated with the Tenant shall not engage in any act intended to facilitate criminal activity on or near the Apartment and Apartment Community premises.

4. Tenant will not permit the dwelling unit to be used for, or to facilitate criminal activity, regardless of whether the individual engaging in such activity is a Tenant, Tenant's guests, licensees, invitees or other person related to or affiliated with the Tenant.

5. Tenant will not engage in the manufacture, sale or distribution of illegal drugs at any location, whether on or near the Apartment and Apartment Community premises or otherwise.

6. Tenant, Tenant's guests, licensees, invitees or other persons related to or affiliated with the Tenant shall not engage in violations of Pennsylvania's alcoholic beverage laws on or near the Apartment and Apartment Community premises.

7. **Violation of the above provisions shall be a material violation of the Lease and cause for termination of tenancy.** Unless otherwise provided by law, proof of violation shall not require criminal conviction, but shall be a preponderance of the evidence.

8. In case of conflict between the provisions of this Addendum and any other provisions of the Lease, the provisions of the Addendum shall govern.

ALL TENANTS MUST SIGN:

| | | | |
|---|---|---|---|
| Tenant 1 | Date Signed | Guarantor 1 | Date Signed |
| Tenant 2 | Date Signed | Guarantor 1 | Date Signed |
| Tenant 3 | Date Signed | Guarantor 1 | Date Signed |
| Tenant 4 | Date Signed | Guarantor 1 | Date Signed |
| Tenant 5 | Date Signed | Guarantor 1 | Date Signed |
| Tenant 6 | Date Signed | Guarantor 1 | Date Signed |
| Authorized Agent for Landlord | Date Signed | | |

*Crystal Ayres*

Document digitally signed using RENTCafe eSignature services. Document ID: 591359

## BED BUG ADDENDUM TO LEASE

This Addendum is made part of the Lease dated September 13, 2021 between Tyliah Phillips ("Tenant") and Post Presidential Property Owner, LLC ("Landlord"), and Post Commercial Real Estate LLC ("Agent for Landlord"), to rent J0803 (the "Apartment") at Jefferson Building at Presidential City ("the APARTMENT COMMUNITY") located at the address 3850 City Avenue, a.k.a. 3900 City Avenue, Philadelphia, PA 19131.

In consideration of the execution of a Lease for the Apartment identified in the Lease, Landlord and Tenant agree:

1. The City of Philadelphia has declared bed bugs to be a pest of significant public health importance subject to investigation and remediation provisions per the Philadelphia Property Maintenance Code §9-4502 (the "Philadelphia PM Code");Landlord and Tenant agree that preventing bed bug infestation at the Apartment Community is an important objective that is mutually beneficial;

2. In accordance with the Philadelphia PM Code, Landlord has developed, maintained and is following a bed bug control plan under which;
   - Landlord is responsible at Landlord's expense to engage professional pest management services within ten (10) days of notice to investigate and remediate reported bed bug infestations in any Apartment, the units directly adjacent to, above and below the Apartment and any common areas;
   - Landlord will acknowledge a report of known or suspected bed bugs within five (5) business days of receipt and maintain a record of all complaints and control measures for two (2) years;
   - Landlord will notify tenants of all units affected by a bed bug complaint of the pest management professional's determination within five (5) business days of receipt;
   - Landlord's pest management professional shall remediate until no evidence of bed bugs can be found in the Apartment or other area reported and monitor the remediated locations for twelve (12) months;

3. Landlord has provided Tenant with a written disclosure of the history of any bed bug infestation and remediation history for the Apartment for the last 120 days;

4. Tenant represents that (1) he is not aware of any bed bug infestation or presence in his furniture, clothing or personal property and possessions; (2) he has fully disclosed to Landlord any previous bed bug infestation; and (3) he has used a licensed pest control professional to properly treat all furniture, clothing or personal property and possessions that may have been exposed to bed bugs;

5. In accordance with the Philadelphia PM Code, Tenant acknowledges his **duty to report** if he finds or reasonably suspects any signs of bed bugs in the Apartment or the Apartment Community to Landlord in writing within five (5) business days.  Tenant understands that eliminating bed bug infestation can be accomplished if treated early;

6. Tenant agrees to permit Landlord access to the Apartment at reasonable times when notified at least 24 hours in advance and to cooperate fully with Landlord's efforts to investigate, professionally treat or monitor any infestation of bed bugs or other pests in the Apartment Community;

6. Tenant agrees to follow the reasonable recommendations of Landlord's pest control professionals to treat his personal belongings as required to control infestation of bed bugs or other pests and to prevent future infestations;

7. Tenant's failure to promptly report the presence of bed bugs in the Apartment or to cooperate fully with Landlord's pest control efforts may be found a violation of the Lease and lead to termination.

8. In accordance with the Philadelphia PM Code, if Tenant notifies the Landlord in writing within 365 days of Lease commencement that Tenant found or reasonably suspects a bed bug infestation in the Apartment, or within 180 days of discovery of a bed bug infestation in an adjoining unit, Landlord shall bear the cost of the investigation and remediation. If Tenant notifies Landlord of bed bug infestation in the Apartment more than 365 days after Lease commencement, Tenant shall be responsible to share the costs of investigation and remediation with Landlord.

Document digitally signed using RENTCafe eSignature services. Document ID: 591359

ALL TENANTS MUST SIGN:

| | | | |
|---|---|---|---|
| Tenant 1 | Date Signed | Guarantor 1 | Date Signed |
| Tenant 2 | Date Signed | Guarantor 1 | Date Signed |
| Tenant 3 | Date Signed | Guarantor 1 | Date Signed |
| Tenant 4 | Date Signed | Guarantor 1 | Date Signed |
| Tenant 5 | Date Signed | Guarantor 1 | Date Signed |
| Tenant 6 | Date Signed | Guarantor 1 | Date Signed |

*Crystal Ayres*

Authorized Agent for Landlord          Date Signed

Document digitally signed using RENTCafe eSignature services. Document ID: 591359

## APARTMENT INSPECTION REPORT
*(To be filled out by Tenant and returned within 1 week of move-in)*

**Apartment Community:**    **Jefferson Building at Presidential City**
**Apartment No:**    **J0803**

| | Excellent | Fair | Poor | Details |
|---|---|---|---|---|
| **Kitchen** | | | | |
| Cleanliness | | | | |
| Sink & Faucet | | | | |
| Stove (test) | | | | |
| Refrigerator | | | | |
| Garbage Disposal | | | | |
| Dishwasher (test) | | | | |
| Counters | | | | |
| Cabinets | | | | |
| Floor | | | | |
| Walls (paint, holes) | | | | |
| Ceiling | | | | |
| Lighting Fixtures | | | | |
| Outlets | | | | |
| Windows (paint, operation) | | | | |
| Blinds | | | | |
| | | | | |
| **Bathroom** | | | | |
| Cleanliness | | | | |
| Sink & Faucet | | | | |
| Vanity | | | | |
| Toilet (Bowl / Seat) | | | | |
| Medicine Cabinet | | | | |
| Mirror | | | | |
| Racks / Shelves / Acc. | | | | |
| Closets | | | | |
| Shower Plumbing (test) | | | | |
| Curtain Rod | | | | |
| Tub | | | | |
| Caulking | | | | |
| Tub Hardware | | | | |
| Heater | | | | |
| Door / Lock | | | | |
| Windows | | | | |
| Floor | | | | |
| Walls (paint, holes) | | | | |
| Ceiling | | | | |

*PCRE v. 2.1.21*

| | | | | |
|---|---|---|---|---|
| Lighting Fixtures | | | | |
| Outlets | | | | |
| Windows (paint, operation) | | | | |
| Blinds | | | | |
| | | | | |
| **Bedrooms** | | | | |
| Cleanliness | | | | |
| Door / Lock | | | | |
| Closets (doors, organizers) | | | | |
| Floor | | | | |
| Walls (paint, holes) | | | | |
| Ceiling | | | | |
| Lighting Fixtures | | | | |
| Outlets (elec, cable, phone) | | | | |
| Windows (paint, operation) | | | | |
| Blinds | | | | |
| | | | | |
| **Living Room / Other Spaces** | | | | |
| Cleanliness | | | | |
| Doors / Locks | | | | |
| Closets (doors, organizers) | | | | |
| Floor | | | | |
| Walls (paint, holes) | | | | |
| Ceiling | | | | |
| Lighting Fixtures | | | | |
| Outlets (elec, cable, phone) | | | | |
| Windows (paint, operation) | | | | |
| Blinds | | | | |
| | | | | |
| **Amenities & Safety** | | | | |
| Water Pressure | | | | |
| Water Temp | | | | |
| Heating System | | | | |
| Air Conditioning | | | | |
| Washer/Dryer (test) | | | | |
| Thermostat | | | | |
| Smoke Detectors | | | | |
| Fire Extinguishers | | | | |

Document digitally signed using RENTCafe eSignature services. Document ID: 591359



**Department of**
**Licenses and Inspections**
CITY OF PHILADELPHIA

# 🏢 Certificate of Rental Suitability

Certificate Number  78072

| ADDRESS | RENTAL LICENSE NUMBER |
|---|---|
| 3850 City Avenue, a.k.a. 3900 City Avenue, Philadelphia, PA 19131 | 713290 |
| | **DATE ISSUED** |
| | 08/09/2021 |
| **NUMBER OF LICENSED UNITS (ZONING)** | **EXPIRATION DATE** |
| 330 | 11/07/2021 |

 In accordance with Philadelphia Code Section PM-102.6.4, at the inception of each tenancy, an owner shall provide to the tenant a Certificate of Rental Suitability issued by the Department of Licenses and Inspections no more than sixty (60) days prior to the inception of the tenancy.

A search of the Department of Licenses & Inspections' data records indicates that on the date issued there are no available notices of uncorrected code violations on file for the property.

**OWNER'S AFFIDAVIT**

Subject to the penalties relating to unsworn falsification to authorities, I hereby attest that all fire protection and smoke detection equipment for the premises is present and in proper operating order in accordance with all applicable requirements of the Philadelphia Code and regulations and standards adopted thereunder; the operating systems and the property are free from defects which affect the health and safety of the occupants or the habitability of the property, and including but not limited to those set forth in department regulation; and I will continue to maintain the operating systems and the property free from defects which affect the health and safety of the occupants and the habitability of the property throughout the tenancy. In addition, I attest that I have provided the tenant with a copy of the City of Philadelphia "Partners for Good Housing" brochure in one of the published languages requested by the tenant.

| NAME (PLEASE PRINT) | RENTAL UNIT NUMBER |
|---|---|
| Tyliah Phillips | J0803 |
| **SIGNATURE** | **DATE SIGNED** |
| *[signature]* | |
| **AUTHORIZED AGENT FOR LANDLORD** | **DATE SIGNED** |
| *Crystal Ayres* | |

 **NOTICE TO TENANT**

This Certificate is valid only if signed by the owner and a copy of "Partners for Good Housing" is attached.  To report code violations please contact the Department of Licenses & Inspections at 215-686-2463 or enter an on-line complaint at WWW.PHILA.GOV.  All complaints are confidential.

## Document Information

Document Reference Number: 591359

| Document Pages: 22 | Signatures: 16 Initials: 22 | Status: Completed |
|---|---|---|

| Signature Summary | Signature | Initials | Timestamp | Signing Status |
|---|---|---|---|---|
| Tyliah Phillips | | | 09/13/2021 04:17:36 PM CST | Completed |
| Document Started: Email Address: | 09/13/2021 03:16:15 PM CST tyliah_phillips@yahoo.com | | | |
| Crystal Ayres | | | 09/15/2021 04:09:03 PM CST | Completed |
| Document Started: Email Address: | 09/15/2021 04:08:16 PM CST crystal@postrents.com | | | |

| Signature Details | Page | Signature/Initials | Signing Status | Tracking Details |
|---|---|---|---|---|
| Tyliah Phillips | 1 | | Completed | IP Address: 73.81.121.21 Timestamp: 09/13/2021 03:47:22 PM CST User Agent: Safari on iPhone |
| Tyliah Phillips | 2 | | Completed | IP Address: 73.81.121.21 Timestamp: 09/13/2021 03:50:50 PM CST User Agent: Safari on iPhone |
| Tyliah Phillips | 3 | | Completed | IP Address: 73.81.121.21 Timestamp: 09/13/2021 03:53:13 PM CST User Agent: Safari on iPhone |
| Tyliah Phillips | 4 | | Completed | IP Address: 73.81.121.21 Timestamp: 09/13/2021 03:55:26 PM CST User Agent: Safari on iPhone |
| Tyliah Phillips | 5 | | Completed | IP Address: 73.81.121.21 Timestamp: 09/13/2021 03:57:22 PM CST User Agent: Safari on iPhone |
| Tyliah Phillips | 6 | | Completed | IP Address: 73.81.121.21 Timestamp: 09/13/2021 03:59:22 PM CST User Agent: Safari on iPhone |
| Tyliah Phillips | 7 | | Completed | IP Address: 73.81.121.21 Timestamp: 09/13/2021 04:00:53 PM CST User Agent: Safari on iPhone |
| Tyliah Phillips | 8 | | Completed | IP Address: 73.81.121.21 Timestamp: 09/13/2021 04:05:44 PM CST User Agent: Safari on iPhone |
| Tyliah Phillips | 9 | | Completed | IP Address: 73.81.121.21 Timestamp: 09/13/2021 04:07:50 PM CST User Agent: Safari on iPhone |
| Tyliah Phillips | 10 | | Completed | IP Address: 73.81.121.21 Timestamp: 09/13/2021 04:09:33 PM CST User Agent: Safari on iPhone |
| Tyliah Phillips | 11 | | Completed | IP Address: 73.81.121.21 Timestamp: 09/13/2021 04:09:36 PM CST User Agent: Safari on iPhone |
| Tyliah Phillips | 13 | | Completed | IP Address: 73.81.121.21 Timestamp: 09/13/2021 04:10:03 PM CST User Agent: Safari on iPhone |
| Tyliah Phillips | 14 | | Completed | IP Address: 73.81.121.21 Timestamp: 09/13/2021 04:11:19 PM CST User Agent: Safari on iPhone |
| Tyliah Phillips | 15 | | Completed | IP Address: 73.81.121.21 Timestamp: 09/13/2021 04:12:47 PM CST User Agent: Safari on iPhone |
| Tyliah Phillips | 15 | | Completed | IP Address: 73.81.121.21 Timestamp: 09/13/2021 04:12:53 PM CST User Agent: Safari on iPhone |

| | | | | |
|---|---|---|---|---|
| Tyliah Phillips | 15 | | Completed | IP Address: 73.81.121.21<br>Timestamp: 09/13/2021 04:12:52 PM CST<br>User Agent: Safari on iPhone |
| Tyliah Phillips | 15 | | Completed | IP Address: 73.81.121.21<br>Timestamp: 09/13/2021 04:12:54 PM CST<br>User Agent: Safari on iPhone |
| Tyliah Phillips | 16 | | Completed | IP Address: 73.81.121.21<br>Timestamp: 09/13/2021 04:12:57 PM CST<br>User Agent: Safari on iPhone |
| Tyliah Phillips | 17 | | Completed | IP Address: 73.81.121.21<br>Timestamp: 09/13/2021 04:14:15 PM CST<br>User Agent: Safari on iPhone |
| Tyliah Phillips | 19 | | Completed | IP Address: 73.81.121.21<br>Timestamp: 09/13/2021 04:16:13 PM CST<br>User Agent: Safari on iPhone |
| Tyliah Phillips | 22 | | Completed | IP Address: 73.81.121.21<br>Timestamp: 09/13/2021 04:17:31 PM CST<br>User Agent: Safari on iPhone |
| Crystal Ayres | 1 | | Completed | IP Address: 68.163.45.26<br>Timestamp: 09/15/2021 04:08:25 PM CST<br>User Agent: Chrome on MacOS |
| Crystal Ayres | 2 | | Completed | IP Address: 68.163.45.26<br>Timestamp: 09/15/2021 04:08:27 PM CST<br>User Agent: Chrome on MacOS |
| Crystal Ayres | 3 | | Completed | IP Address: 68.163.45.26<br>Timestamp: 09/15/2021 04:08:29 PM CST<br>User Agent: Chrome on MacOS |
| Crystal Ayres | 4 | | Completed | IP Address: 68.163.45.26<br>Timestamp: 09/15/2021 04:08:32 PM CST<br>User Agent: Chrome on MacOS |
| Crystal Ayres | 5 | | Completed | IP Address: 68.163.45.26<br>Timestamp: 09/15/2021 04:08:33 PM CST<br>User Agent: Chrome on MacOS |
| Crystal Ayres | 6 | | Completed | IP Address: 68.163.45.26<br>Timestamp: 09/15/2021 04:08:35 PM CST<br>User Agent: Chrome on MacOS |
| Crystal Ayres | 7 | | Completed | IP Address: 68.163.45.26<br>Timestamp: 09/15/2021 04:08:36 PM CST<br>User Agent: Chrome on MacOS |
| Crystal Ayres | 8 | | Completed | IP Address: 68.163.45.26<br>Timestamp: 09/15/2021 04:08:40 PM CST<br>User Agent: Chrome on MacOS |
| Crystal Ayres | 9 | | Completed | IP Address: 68.163.45.26<br>Timestamp: 09/15/2021 04:08:41 PM CST<br>User Agent: Chrome on MacOS |
| Crystal Ayres | 10 | | Completed | IP Address: 68.163.45.26<br>Timestamp: 09/15/2021 04:08:43 PM CST<br>User Agent: Chrome on MacOS |
| Crystal Ayres | 10 | | Completed | IP Address: 68.163.45.26<br>Timestamp: 09/15/2021 04:08:44 PM CST<br>User Agent: Chrome on MacOS |
| Crystal Ayres | 13 | | Completed | IP Address: 68.163.45.26<br>Timestamp: 09/15/2021 04:08:46 PM CST<br>User Agent: Chrome on MacOS |
| Crystal Ayres | 14 | | Completed | IP Address: 68.163.45.26<br>Timestamp: 09/15/2021 04:08:48 PM CST<br>User Agent: Chrome on MacOS |
| Crystal Ayres | 16 | | Completed | IP Address: 68.163.45.26<br>Timestamp: 09/15/2021 04:08:52 PM CST<br>User Agent: Chrome on MacOS |

| Crystal Ayres | 17 | *Crystal Ayres* | Completed | IP Address: 68.163.45.26<br>Timestamp: 09/15/2021 04:08:55 PM CST<br>User Agent: Chrome on MacOS |
| Crystal Ayres | 19 | *Crystal Ayres* | Completed | IP Address: 68.163.45.26<br>Timestamp: 09/15/2021 04:08:57 PM CST<br>User Agent: Chrome on MacOS |
| Crystal Ayres | 22 | *Crystal Ayres* | Completed | IP Address: 68.163.45.26<br>Timestamp: 09/15/2021 04:09:00 PM CST<br>User Agent: Chrome on MacOS |